UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BLUE LINE FOODSERVICE
DISTRIBUTION, INC.,

Plaintiff,

v.

JOHN CATHCART, NERYS
LOGISTICS, INC., MERCATOR
CAPITAL ADVISORS, INC.,

Defendants.

Case No.:  24-CV-1250-W-MMP

**ORDER DENYING MOTIONS TO DISMISS**

**[Doc. 3, 5]**

Pending before the Court are two motions to dismiss under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).  On September 3, 2024, Defendants John Cathcart and Mercator Capital Advisors, Inc. ("Mercator") filed their motion.  (*Cathcart Mot.* [Doc. 3-1].)  The same day, Defendant Nerys Logistics, Inc. ("Nerys Logistics") filed a separate motion to dismiss.  (*Nerys Log. Mot.* [Doc. 5-1].)  Plaintiff Blue Line Foodservice Distribution, Inc. ("Blue Line") opposed the motions.  (*Opp'n* [Doc. 18].)  Defendants separately replied. (*Cathcart Reply* [Doc. 21]); (*Nerys Log. Reply* [Doc. 23].)

The Court decides the matter on the papers submitted and without oral argument. See Civ. R. 7.1(d)(1).  For the following reasons, the Court denies the motions.

1  **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2         This case arises from Defendants' alleged intentional scheme over years to

3  fraudulently conceal or transfer money after the U.S. District Court for the Eastern

4  District of Michigan entered a 2020 default judgment (*Default Judgment* [Doc. 1 at

5  Ex. A]).  The Default Judgment was entered in favor of Plaintiff Blue Line for

6  approximately $6.3 million against two debtor entities who are not parties in this case.

7  (*Id.*)  Those two debtors were Comercializadora Nerys de Mexico S.A. de C.V. ("Com

8  Nerys") and Nery's USA, Inc. ("Nery's USA").  (*Id.*)  The Default Judgment was entered

9  following arbitration and a stipulated award (the "Stipulated Award") between Plaintiff

10 and the debtors.  (*Stip. Award* [Doc. 3-5] at 2.)

11        Years earlier, in 2012, Blue Line entered a five-year distributor agreement (the

12 "Agreement," *Agrmt.* [Doc. 3-2]) with Com Nerys and Nery's USA.  (*Compl.* [Doc. 1]

13 ¶¶ 1, 4.)  After Com Nerys and Nery's USA allegedly breached the Agreement, Blue

14 Line filed its first complaint in the Eastern District of Michigan for arbitration in 2018.

15 Those parties reached a stipulated award in favor of Blue Line and against Com Nerys

16 and Nery's USA, jointly and severally, for $6,342,402.63.  On October 5, 2020, the

17 district court entered the arbitration award amount as a final default judgment against

18 Com Nerys and Nery's USA.  (*Compl.* ¶¶ 1, 4, 5; *Default Judgment*.)[1]  The Default

19 Judgment did not incorporate the Stipulated Award and did not contain terms of the

20 Stipulated Award beyond the award amount and liability as joint and several.

21        Com Nerys and Nery's USA failed to pay Plaintiff.  (*Compl.* ¶¶ 5, 6.)  Blue Line

22 opened a post-judgment debtor's examination in this District.  (*Id.* ¶ 7.)  During

23 discovery, Blue Line learned that a defendant in this case but not in the prior case, John

24 Cathcart, who was the majority owner, CEO, and CFO of Nery's USA, "had under-

25

26

27        [1] The Court takes judicial notice on its own motion of the docket and filings in *Blue Line

28 Foodservice Distrib., Inc. v. Comercializadora Nerys De Mexico S.A. de C.V.*, No. 2:20-CV-11043
(E.D. Mich. 2020).  Fed. R. Evid. 201.

capitalized [Nery's USA] and Com Nerys, disregarded the corporate form, and transferred money through a maze of related entities, Defendants [in this case,] to enrich himself and evade" the Default Judgment.  (*Id.* ¶ 8.)  Plaintiff alleges that "at Cathcart's direction, [Nery's USA] and Defendants willfully and fraudulently transferred a substantial amount of [Nery's USA's] assets for grossly low or even no consideration at all, with the goal of defrauding Blue Line and thwarting its ability to enforce the [Default] Judgment against [Nery's USA] and Com Nerys."  (*Id.* ¶ 9.)

The Complaint also alleges connections between the Default Judgment debtors and the parties in this case.  Defendant Nerys Logistics is the parent corporation of Nery's USA.  (*Id.* ¶ 11.)  Plaintiff alleges that Nerys Logistics was "at all relevant times formed, owned, operated, controlled, and dominated by Cathcart;" Nerys Logistics "was and is subject to Cathcart's effective direction and control;" and Nerys Logistics is united in interest with Cathcart, is subject to Cathcart's effective direction and control, and was and is operated as Cathcart's alter ego.  (*Id.*)  Cathcart is allegedly the majority shareholder of Nery's USA and the sole shareholder of Mercator.  (*Id.* ¶ 13.)

Plaintiff also learned in post-judgment discovery that Com Nerys and Nery's USA "diverted substantial funds" to Defendants Mercator[2] and Nerys Logistics (jointly, the "Cathcart Entities") and that Cathcart used the judgment debtors to pay certain personal expenses.  (*Id.* at 6.)[3]  Plaintiff alleges: "Nerys Logistics was formed by Cathcart in 2011,

---

[2] "Cathcart is the President and sole shareholder of Mercator.  Cathcart formed Mercator in 2012, the same year [Nery's USA] and Com Nerys signed a contract with Blue Line."  (*Compl.* at 6.)

[3] Blue Line argues that post-judgment discovery occurred from 2021 to 2022 and that it "first learned of Defendants' fraudulent activity" then.  (*Opp'n.* at 9.)  The Complaint does not allege the time-period of post-judgment discovery, but attached to the Complaint is the post-judgment deposition transcript of Cathcart, dated May 12, 2021.  (*Cathcart Depo.* [*Compl.* Ex. B] at 1–2.)  Cathcart's deposition testimony is a source of the facts alleged in support of fraudulent transfer.  (*See Compl.* ¶¶ 30–32, 36, 38, 44.)  Also, Plaintiff alleged that the post-judgment discovery occurred "by registering the judgment in the United States District Court of the Southern District of California."  (*Id.* ¶ 26; *Blue Line Foodservice Dist., Inc. v. Comercializadora Nerys De Mexico S.A. de C.V.*, No. 21-mc-124 (S.D. Cal. 2021).)  Thus, post-judgment discovery occurred over a period of time, including the May 2021 deposition.  (*Id.* ¶¶ 5–8.)

and Cathcart was the sole officer of Nerys Logistics until June, 2022," and it "had no written contract with [Nery's USA] or Com Nerys or any other documentation whatsoever to substantiate any claimed services that could justify the transfer of funds." (*Id.*)  "Nerys Logistics stopped doing business in 2017—the same year Blue Line terminated its relationship with [Nery's USA] and Com Nerys and shortly before [the] arbitration." (*Id.*)

According to the Complaint, "Cathcart continued to transfer money from [Nery's USA] to Nerys Logistics" during the arbitration and "years after Nerys Logistics stopped doing business." (*Id.*; *Cathcart Depo.* at 41:4–16.)  The Complaint also alleged that Cathcart "transferred thousands of dollars weekly to Mercator, allegedly for consulting, management, and other fees," and that the funds were then transferred to Cathcart. (*Compl.* at 7.)  The Complaint further specified that Mercator bank statements showed transfers from Mercator to Cathcart's personal account for personal expenses and that these transfers were funded by Nery's USA, effectuated through Defendants in this case. (*Id.*)  The Complaint alleged that Defendants are alter egos; Mercator and Nerys Logistics are alter egos of Cathcart and that Cathcart's fraudulent transfers "made it impossible for Blue Line to effectuate the [Default Judgment]." (*Id.* at 8.)

On April 20, 2023, Blue Line filed a second complaint in the Eastern District of Michigan, similar but not identical to the one in this case, alleging fraudulent transfer.[4] The district court there dismissed the complaint for lack of personal jurisdiction over Cathcart, Nery's USA, Mercator, and later Nery's Logistics.  (*Second Michigan Case* Doc. 32.)  Plaintiff filed its complaint in this case on July 19, 2024.  Later, in the Second Michigan Case, Plaintiff voluntarily dismissed without prejudice its claims against Com Nerys.  (*Second Michigan Case* Doc. 42, 43.)

---

[4] On its own motion the Court takes judicial notice of the docket and complaint in *Blue Line Foodservice Dist., Inc. v. Cathcart*, No. 2:23-cv-10925 (E.D. Mich. 2023) ("*Second Michigan Case*"). Fed. R. Evid. 201.

In this case, Plaintiff alleges three causes of action against Cathcart, Nerys Logistics, and Mercator: (1) fraudulent transfer under the California Uniform Voidable Transactions Act, Cal. Civ. Code § 3439.04 ("UVTA"), (2) common law fraudulent conveyance, and (3) alter ego liability. (*Compl.* [Doc. 1].) Blue Line alleges it is a creditor of Com Nerys and Nery's USA and that it was defrauded by Defendants' fraudulent transfers "to unlawfully spend the money owed to Blue Line" and "with the actual intent to hinder, delay, or defraud Blue Line." (*Id.* at 9.)

Defendants moved for dismissal on grounds that (1) the UVTA and common law claims are time barred because the alleged transactions fall outside the statute of limitations and the statute of report; (2) the Complaint fails to state a claim of fraudulent transfer under the UVTA; (3) the Complaint fails to state a claim for common law fraudulent conveyance; (4) the Complaint fails to state a claim for alter ego liability; and (5) the terms of the Stipulated Award bar the claims against Defendants as entities related to the debtors covered by the Stipulated Award's release of claims.

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss a complaint for failing "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In evaluating the motion, the Court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Although well-pled allegations in the complaint are assumed true, a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679.

When a complaint alleges fraud, it must also "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that that they have done anything wrong.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  A complaint alleging fraud may not "merely lump multiple defendants together" and instead must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (internal citation and quotation marks omitted).  When alleging fraud against multiple defendants, "a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'"  *Id.* at 765 (quoting *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir.1989)).

Averments of fraud must allege "the who, what, when, were, and how" of the misconduct.  *Kearns*, 567 F.3d at 1124; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  However, these allegations of malice, intent, knowledge, and mental state cannot be conclusory or speculative, as they

remain subject to Rule 8.  As in this case, Rule 9(b)'s heightened pleading standard applies to actual fraudulent transfer claims.  *LaChapelle v. Kim*, No. 15-CV-2195-JSC, 2015 WL 7753235, 2015 U.S. Dist. LEXIS 161801, at *12 (N.D. Cal. Dec. 1, 2015). Plaintiff must plead with particularity the circumstances surrounding the actual fraudulent transfer.  *Kearns*, 567 F.3d at 1124.

## III. ANALYSIS

### A. Fraudulent Conveyance Under California's UVTA

Plaintiff's first cause of action against all Defendants is based on California's UVTA, Cal. Civil Code 3439.04.  (*Compl.* ¶¶ 54–61.)  Under the UVTA, a transfer of assets made by (or an obligation incurred by) a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (or incurred the obligation), "(1) with an actual intent to hinder, delay or defraud any creditor of the debtor" or "(2) [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or "(B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.  Cal. Civ. Code § 3439.04(a).

The UVTA "permits defrauded creditors to reach property in the hands of a transferee."  *Mejia v. Reed*, 31 Cal.4th 657, 663 (2003); Cal. Civ. Code § 3439.04.  "A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim."  *Lo v. Lee*, 24 Cal. App. 5th 1065, 1071 (2018) (citing *Yaesu Elec. Corp. v. Tamura*, 28 Cal. App. 4th 8, 13 (1994)).  "The purpose of the UVTA is to prevent debtors from placing, beyond the reach of creditors, property that should be made available to settle a debt."  *Chen v. Berenjian*, 33 Cal. App. 5th 811, 817 (2019).

1

2

### 1.    Time Limits On Plaintiff's Fraudulent Transfer Claims

3    Defendants challenge the timeliness of Plaintiff's claims, filed July 2024, with

4    multiple arguments based on the allegations that fraudulent transfers occurred in 2015–18

5    and 2019, (*Compl.* ¶¶ 31, 32, 36, 44), and that the Default Judgment was entered in

6    October 2020.  Plaintiff argues that (1) the claims are timely filed and (2) equitable

7    tolling extends the time to file because it did not learn of the fraudulent transfers until the

8    post-judgment discovery and could not have suspected fraudulent transfer at the time it

9    entered the Stipulated Award or sought Default Judgment.  Plaintiff also argues that the

10    facts surrounding an equitable tolling analysis are disputed and require the Court deny the

11    motions to dismiss to permit discovery on those facts.

12    A defendant may raise a statute of limitations defense on a motion to dismiss "if

13    the running of the statute is apparent on the face of the complaint."  *Jablon v. Dean*

14    *Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Ledesma v. Jack Stewart Produce, Inc.*,

15    816 F.2d 482, 484 n.1 (9th Cir. 1987).  A motion to dismiss may be granted on grounds

16    of a statute of limitations "only if the assertions of the complaint, read with the required

17    liberality, would not permit the plaintiff to prove that the statute was tolled."  *Jablon*, 614

18    F.2d at 682.

19    The parties dispute four key issues regarding timeliness: (1) whether the four-year

20    statute of limitation has run; (2) whether the one-year statute of limitation has run from

21    delayed discovery; (3) whether the seven-year statute of repose bars the claims; and (4)

22    which alleged action triggers the start of either statutory time limit.  The Court addresses

23    these disputes to determine if the Complaint, read with the required liberality, permits

24    Plaintiff to prove timeliness or tolling.  *See id.*  If so, the motions to dismiss on this

25    ground must be denied.  *Id.*

26    The UVTA is subject to two possible time limitations, statute of limitation (Cal.

27    Civ. Code § 3439.09(a), (b)) and statute of repose (*id.* at § 3439.09(c)).  Only the statute

28    of limitations permits equitable tolling based upon delayed discovery.  *Id.* at

8

§ 3439.09(a).  Both time limitations state that either of two acts may trigger the start of the clock, the date of the alleged fraudulent transfer or the date of an alleged incurred obligation.  Cal. Civ. Code § 3439.09(a), (c).

First, the Court addresses whether the face of the Complaint plainly resolves the start date of the limitation periods.  Claims under the UVTA must be brought "not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant."  Cal. Civ. Code § 3439.09(a)."  *Pyramid Ctr., Inc. v. Weil (In re Momentum Dev., LLC)*, 649 B.R. 333, 338 (9th Cir. BAP 2023).

Plaintiff does not allege a single transaction or obligation as triggering the time periods, but rather a scheme of transfers to evade payment of the debt.  "Under *Cortez v. Vogt*, 52 Cal. App. 4th 917, 937 (1997), and its progeny, the statute of limitations on a fraudulent transfer in California begins on the date of the transfer or on the date a judgment is entered against a debtor."  *Id.* at 336.  It is not evident on the face of the Complaint which act starts the limitation period.  The parties dispute the operative facts.  Plaintiff argues that the earliest possible date to trigger the four-year limitation is the October 5, 2020 Default Judgment formalizing the debt and the debtors because, Plaintiff argues, it would not have entered the Stipulated Award or pursued the Default Judgment if it knew of the debtors' inability to pay the award.  None of this appears in the Complaint.

The start date of the statutory time limitations are the "date of the transfer" or, if not barred by the statute of repose, then the "date the transfer was or could reasonably have been discovered by the claimant."  Cal. Civ. Code § 3439.09(a).  According to Plaintiff, the UVTA's statute of limitations runs from its discovery of the alleged fraudulent transfers, one year before it filed suit a second suit in 2023 in the Eastern District of Michigan.  (*Opp'n* at 5.)  Defendants argue that more than four years have passed since all the alleged transfers in 2015–18 and 2019, barring the claims based on all transfers alleged with a specific date. (*See Compl.* ¶¶ 31, 32, 36, 44.)  Plaintiff opposes,

arguing that the 2019 transfers are within the four-year period preceding the 2023 filing of the Second Michigan Case and that the statute did not begin to run until they discovered the fraudulent transfers in the 2021–22 post-judgment discovery.  Plaintiff argues it timely filed, within one year of discovery, by filing the Second Michigan Case in 2023.  Although not briefed by any party, the implication of this position is that time was tolled between the filing of the Second Michigan Case and the filing of this case.  A lack of presentment and briefing preclude the Court addressing the issue.

The face of the Complaint must resolve these disputes at this stage in the case. Plaintiff patently alleged that "through post-judgment discovery" it "uncovered that Defendant Cathcart . . . had under-capitalized [Nery's USA] and Com Nerys, disregarded the corporation form, and transferred money through a maze of related entities, Defendants here, to enrich himself and evade the Judgment [against Nery's USA and Com Nerys].  (*Compl.* ¶¶ 8, 29.)  The Complaint alleged that post-judgment discovery included "taking the deposition of John Cathcart . . . and obtaining relevant bank records."  (*Id.* ¶ 30.)  Plaintiff attached to the Complaint the deposition testimony of John Cathcart from May 12, 2021.  (*Id.* ¶¶ 30 –32; *Cathcart Depo.* at 1.)  Plaintiff also alleged that, through this same post-judgment discovery, it "discovered that Com Nerys and [Nery's USA] diverted substantial funds to Mercator and Nerys Logistics . . . and that Cathcart used the judgment debtors to pay certain personal expenses."  (*Compl.* ¶ 33.) Based upon these allegations, presumed true and read with the requisite liberality, it remains possible that Plaintiff could prove that the fraudulent transfers were not and could not have been discovered before the post-judgment discovery and that, accordingly, the filing of the Second Michigan Case was timely.  In the absence of any motion or briefing, the Court declines to address the legal impact on Plaintiff's timeliness of the time between the 2023 Complaint in the Second Michigan Case and the Complaint here. As such, the Court must deny at this time Defendants' motions to dismiss with respect to the statute of limitations.

Second, the Court addresses the statute of repose.  The UVTA provides a seven-year statute of repose running from the same two events—transfer or incurred obligation—that is not subject to tolling and cannot be waived.  Cal. Civ. Code § 3439.09(c); *PGA West Residential Assn., Inc. v. Hulven Int'l, Inc.*, 14 Cal. App. 5th 156, 170–80 (2017); *Donell v. Keppers*, 835 F. Supp. 2d 871, 877–78 (S.D. Cal. 2001).  "Notwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred."  Cal. Civ. Code § 3439.09(c); *In re Momentum Dev.*, 649 B.R. at 341.  Defendants argue that the statute of repose bars the claims based on transfers during 2015–17 because more than seven years have run since then.  (*See Cathcart Mot.* at 8; *Nerys Log. Mot.* at 8 (citing *Compl.* ¶¶ 31, 38, 44).)

This 2024 case must be based upon fraudulent transfers or incurred obligation during the previous seven years.  Cal. Civil Code § 3439.09(c).  Plaintiff's Complaint alleges that the wrong it suffered is that Cathcart and the Cathcart Entities created an "orchestrated scheme to undermine and evade the $6 million judgment that the Eastern District of Michigan entered against" Com Nerys and Nery's USA.  (*Compl.* ¶¶ 1, 2.)  This Complaint's allegations leave open the possibility that Plaintiff can prove a scheme of fraudulent transfers, including an alleged 2019 transfer of money from Nery's USA to Nerys Logistics as part of the fraudulent scheme.  (*Compl.* ¶¶ 36, 32–37.)  Plaintiff also alleges that Cathcart continued to transfer money from Nery's USA to Nerys Logistics during the arbitration.  (*Id.* ¶ 38.)  Plaintiff alleges that it brought its arbitration proceeding in 2018.  (*Id.* ¶ 22.)  Based solely on the Complaint's allegations, it is possible for Plaintiff to prove that fraudulent transfers of the alleged scheme occurred within the seven years before the filing of this Complaint.

The allegations of the Complaint, liberally construed as required on this motion, do not foreclose Plaintiff's ability to prove that the statute of repose does not bar the claims.  At this time, Defendants' motions to dismiss on grounds of statutes of limitation or

1   repose are denied.  Next, the Court addresses Defendants' challenges to the sufficiency of

2   Plaintiff's allegations on three alleged causes of action.

3

4               **2.      Sufficiency of Plaintiff's UVTA Pleadings**

5            "Courts are to liberally construe California's [UVTA] 'with a view to effecting

6   [its] purpose.' [Its] purpose 'undoubtedly is to prevent debtors from placing property

7   which legitimately should be available for the satisfaction of demands of creditors

8   beyond [creditors'] reach.'"  *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138,

9   1186 (C.D. Cal. 2016) (quoting *Borgfeldt v. Curry*, 25 Cal. App. 624 (1914)).  "In

10  general, a voidable transaction is 'a transfer by the debtor of property to a third person

11  undertaken with the intent to prevent a creditor from reaching that interest to satisfy its

12  claim."  *Tatung Co., Ltd.*, 217 F. Supp. 3d at 1186 –87 (quoting *Kirkeby v. Super. Ct. of*

13  *Orange Cty.*, 33 Cal. 4th 642 (2004)).  "Whether a conveyance was made with fraudulent

14  intent is a question of fact, and proof often consists of inferences from the circumstances

15  surrounding the transfer."  *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005); *see*

16  *also* Cal. Civ. Code § 3439.04(b) (enumerating factors or "badges of fraud").

17           In assessing fraudulent intent, courts consider facts and circumstances surrounding

18  and may look to conduct before and after the alleged transfer.  *See, e.g.*, *U.S. v.*

19  *Lawrence*, 189 F.3d 838, 845 (9th Cir. 1999).  The eleven non-exclusive, statutory

20  "badges of fraud" indicating fraudulent intent are:

21           (1) Whether the transfer or obligation was to an insider.
22           (2) Whether the debtor retained possession or control of the property
     transferred after the transfer.
23           (3) Whether the transfer or obligation was disclosed or concealed.
24           (4) Whether before the transfer was made or obligation was incurred,
     the debtor had been sued or threatened with suit.
25           (5) Whether the transfer was of substantially all the debtor's assets.
26           (6) Whether the debtor absconded.
     (7) Whether the debtor removed or concealed assets.

27

28

24-CV-1250-W-MMP

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b).

Defendants move to dismiss Plaintiff's UVTA claim on grounds that no specific facts were plead to identify fraudulent intent based on these eleven non-exclusive, statutory badges of fraud. (*Cathcart Mot.* at 6–9; *Nerys Log. Mot.* at 6–9.) The Complaint must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b) because Plaintiff's claims are grounded in fraud. *See SBC Berlin 2012–2014, Ltd. v. Babywatch, Inc.*, 2019 WL 13203376, at *12–13, 2019 U.S. Dist. LEXIS 244309, at *34 (N.D. Cal. Oct. 10, 2019); *Kau v. Lawrence*, 2024 WL 3458018, at *2, 2024 U.S. Dist. LEXIS 128692, at *18–19 (C.D. Cal. May 21, 2024). First, the Court examines whether fraudulent intent is sufficiently alleged as to each Defendant as Rule 9(b) requires.

With respect to Cathcart, Plaintiff alleges that Cathcart under-capitalized Nery's USA and Com Nerys as the majority owner, CEO, and CFO of Nery's USA; disregarded the corporate form; and transferred money through a maze of related entities (Nery's USA, Mercator, and Nerys Logistics) to enrich himself and evade the Default Judgment. (*Compl.* ¶ 8.) Cathcart directed Nery's USA, Mercator, and Nerys Logistics to willfully and fraudulently transfer a substantial amount of Nery's USA's assets for grossly low consideration (or none) in order to defraud Plaintiff and thwart its ability to enforce the Default Judgment against Nery's USA and Com Nerys. (*Id.* ¶ 9.) Cathcart was the alter ego of Nerys Logistics, was united in interest with Nerys Logistics, and Nerys Logistics was subject to Cathcart's effective direction and control and operated as his alter ego. (*Id.* ¶ 10.) Cathcart is the majority shareholder of Nery's USA, the sole shareholder of

Mercator, and a shareholder of Nerys Logistics, where he was the sole officer until 2022. (*Id.* ¶ 13.)  Cathcart testified that Nery's USA was under-capitalized and not profitable and that by 2019, he had to loan money to Nery's USA to pay attorneys' fees for the arbitration.  (*Id.* ¶¶ 31, 32.)  Cathcart used the Default Judgment debtors to pay certain personal expenses.  (*Id.* ¶ 33.)  Cathcart testified that in 2019, Nery's USA was transferring money to Nerys Logistics, a company Cathcart owned, but that Cathcart did not know what services were provided.  (*Id.* ¶ 36; *Cathcart Depo.* 40:3–25.)  Cathcart continued to transfer money from Nery's USA to Nerys Logistics during the arbitration and after Nerys Logistics stopped doing business in 2017, and he transferred money from Nery's USA to Mercator to use for his personal benefit.  (*Compl.* ¶¶ 37–39.)  As the creator, President, and sole shareholder of Mercator, Cathcart testified that Nery's USA and its parent Nerys Logistics transferred thousands of dollars weekly to Mercator for consulting, management, and other fees; and those fees were then transferred to Cathcart.  (*Id.* ¶ 40–42.)  No documentation has been produced to support the reason that more than $25,000 per month were transferred from Nery's USA and Nerys Logistics to Mercator and then to Cathcart.  (*Id.* ¶ 43.)  Cathcart testified to receiving several hundred thousand dollars from Nery's USA for management fees "filtered through Mercator," the bulk of which was transferred in 2015–17.  (*Id.* ¶ 44; *Cathcart Depo.* 58:12–59:4.)  Cathcart also received transfers of money from Mercator for his personal and family expenses.  (*Compl.* ¶¶ 45–46.)  Cathcart received all of these transfers from Nery's USA through Mercator or Nerys Logistics.  (*Id.* ¶ 47.)  The Complaint alleges that Cathcart profited substantially without providing any services in exchange for the money he received from Mercator or Nerys Logistics; the transfers led to the undercapitalization of Nery's USA; and each of the transfers "was made with the actual intent to hinder, delay, or defraud Blue Line."  (*Id.* ¶¶ 59–61, 65–68.)

These allegations satisfy the following statutory indicia of fraudulent intent: (1) the transfers were to an insider because Cathcart is alleged to be an insider of Nery's USA, Mercator, and Nerys Logistics; (2) the transfers are alleged to have removed substantially

all of the debtors' remaining assets, leaving them under-capitalized, unable to pay obligations, and incapable of paying the Default Judgments; and (3) the transfers were allegedly made without reasonable value of consideration received because Cathcart allegedly received some of the fraudulent transfer for personal expenses or for undervalued consideration or none at all. *See* Cal. Civ. Code § 3439.04(b)(1), (5), (8). These eleven factors provide guidance and not a mathematical formula to be rigidly applied. Plaintiff has sufficiently pled facts regarding Cathcart's intent and conduct to permit a finding of an actual intent to hinder, delay, or defraud a creditor. *See Hoffman v. Adelman (In re SCI Real Est. Ins., LLC)*, 2013 WL 1829648, at *5, 2013 Bankr. LEXIS 1780, at *7–8 (Bankr. C.D. Cal. May 1, 2013). Although at times conclusory, the allegations of Cathcart's fraudulent intent satisfy California's UVTA requirements.

With respect to Mercator, Plaintiff alleges that it was formed, owned, operated, controlled, and dominated by Cathcart, and that it is the alter ego of Cathcart, is united in interest with Cathcart and is subject to Cathcart's effective direction and control, operating by Cathcart as his alter ego. (*Compl.* ¶ 12.) Mercator received "substantial funds" from Com Nerys and Nery's USA. (*Id.* ¶ 33.) Mercator received funds from Nery's USA at Cathcart's direction for Cathcart's personal use or benefit. (*Id.* ¶ 39.) Mercator was formed in 2012, the same year that Nery's USA and Com Nerys entered the Agreement with Blue Line. Mercator received thousands of dollars weekly from Nery's USA and its parent Nerys Logistics for alleged consulting, management, and other fees that were then transferred from Mercator to Cathcart in the absence of documentation supporting the consideration or services received from Mercator. (*Id.* ¶ 41–43.) Mercator's bank statements show numerous transfers from Mercator to Cathcart for Cathcart's personal expenses, all funded by Nery's USA. (*Id.* ¶¶ 45–47.) As with Cathcart, the Complaint alleges that the purpose of transfers to Mercator were to unlawfully spend money owed to Plaintiff by the Default Judgment and that each of Mercator's transfers "were made with the actual intent to hinder, delay, or defraud Blue Line." (*Id.* ¶¶ 58 –61.) These allegations are sufficient to state the following badges of

fraud: (1) the transactions were made to an insider, that is, Cathcart; and (2) that the transfers from the debtors to Mercator lack evidence that the value of the consideration received by the debtors was reasonably equivalent to the value of the asset transferred. *See* Cal. Civ. Code § 3439.04(b)(1), (8).

Finally, and with respect to Nerys Logistics, the Complaint alleges that it is one of the entities through which Cathcart transferred money to evade Nery's USA's and Com Nerys's obligation to Blue Line from the Default Judgment. (*Compl*. ¶ 8.) Nerys Logistics is the parent corporate of Nery's USA. Nerys Logistics was "formed, owned, operated, controlled, and dominated by Cathcart," is the alter ego of Cathcart, is united in interest with Cathcart, is operated by Cathcart as his alter ego, and is subject to Cathcart's effective direction and control. (*Id*. ¶ 11.) Until June 2022, Cathcart was the sole officer of Nerys Logistics, and he remains a shareholder. (*Id*. ¶ 13.) Nerys Logistics received "substantial funds" from Nery's USA and Com Nerys, despite (1) having no written contract with the debtors or any document to substantiate that any services were provided in exchange for the transfer of funds and (2) Cathcart having no knowledge of what services, if any, Nerys Logistics provided the debtors. (*Id*. ¶¶ 33–36.) Nerys Logistics stopped doing business in 2017, the year that Blue Line terminated its relationship with the debtors and shortly before Plaintiff initiated arbitration against them. (*Id*. ¶¶ 37, 38.) These allegations meet at least two statutory badges of fraud: (1) the transactions were made to an insider—Cathcart; and (2) the transfers from the debtors to Nerys Logistics lack evidence that the consideration received by the debtors is reasonably equivalent to the value of the transferred money. *See* Cal. Civ. Code §3439.04(b)(1), (8).

California permits a UVTA plaintiff to allege the existence of a scheme of transfers to evade or hinder, delay or defraud creditors. *See Aghaian v. Minassian*, 59 Cal. App. 5th 447, 452, 458 (2020) (citing in part *Chen v. Berenjian*, 33 Cal. App. 5th 811, 821 –22 (2019)); *see also Logtale, Ltd. v. Canton*, No. 20-cv-1207-DMR, 2020 WL 4464907, 2020 U.S. Dist. LEXIS 137700 (N.D. Cal. Aug. 3, 2020) (applying the substantive law of *Chen* in the context of a federal procedural challenge to the pleading).

In support of dismissal, Defendants list the factors from section 3439.04(b) that the Complaint arguably omits (*e.g.*, whether debtors retained possession or control of the money after the transfer, whether the transfer was disclosed, whether the transfers were made before or after the debtors were sued or threatened with suit, whether the debtor absconded, etc.).  Also, Defendants point to the alleged facts that debtors received consideration reasonably equivalent to some of the transfers in the form of Cathcart's management and consulting fees.  (*Compl.* ¶¶ 41, 44.)  Defendants argue that courts have dismissed complaints where only three factors are alleged, despite the fact that "[n]o minimum number of factors tips the scales toward actual intent."  *Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221, 236 (9th Cir. BAP 2007).  Defendants argue that the allegations fail to support an inference of scienter.  *See In re SCI Real Est. Invs.*, 2013 WL 1929648, at *5.  Defendants' arguments suggest that some number of alleged "badges of fraud" more than those alleged here must exist to survive dismissal. California courts disagree.  In *Aghaian v. Minassian*, the complaint sufficiently pleaded a UVTA claim, including actual intent, where transfers were made to an insider who was a family member of the transferor, the transferor retained control of the two real properties after transfer, plaintiffs sued before the transfer, and reasonably equivalent value was not received from the transferor's wife for the two real properties.  59 Cal. App. 5th at 456. In this case, where no real property or personal property is at issue, continuing possession of the money after alleged fraudulent transfer is not a relevant allegation.  Under *Aghaian*, the Court concludes that California deems a complaint sufficient to survive a pleading challenge where it alleges (1) an insider's scheme involving repeated transfers, (2) in the alleged absence of reasonably equivalent consideration, (3) between multiple persons or entities to hinder, delay or defraud a creditor, and (4) actual intent to defraud. *Id.*  As explained, the Complaint in this case sufficient alleges facts to support of such a scheme to actually defraud through repeated transfers.

Finally, Defendants raise a general Rule 9(b) challenge to Plaintiff's UVTA claim. Defendants do not explain the specific facts that they argue are missing from the

Complaint other than timing of each transfer.  To the extent that Defendants challenge the absence of factual allegations that establish the date of the fraudulent transfer, the Complaint sufficiently alleges that (1) Cathcart, Mercator, and Nerys Logistics are alter egos of one another; (2) they operated a scheme of multiple fraudulent transfers as previously discussed here; (3) Nery's USA and Nerys Logistics transferred thousands of dollars weekly to Mercator and then Mercator transferred those funds to Cathcart; (4) the bulk of those funds were transferred in 2015, 2016, or 2017; (5) years after it stopped doing business, Nerys Logistics received in 2019 transferred money from Nery's USA for unknown services; and (6) the alleged fraudulent transfers were made at Cathcart's direction to defraud Plaintiff and to evade the Default Judgment.  (*Compl.* ¶¶ 9, 29, 32–37, 41–44.)  These allegations are sufficiently plead as to each Defendant's alleged role in the alleged scheme.  *See id.*; *Kearns*, 567 F.3d at 1124.

### B.    Common Law Fraudulent Conveyance Claim

Plaintiff's second cause of action is a common law claim for fraudulent conveyance.  (*Compl.* at 9.)  The elements for a fraudulent conveyance claim under common law are the same as under California's UVTA.  *Lehman Bros. Holdings, Inc. v. Cafacalas*, No. LA-CV-16-03167 JAK (PJWx), 2018 WL 6074597, 2018 U.S. Dist. LEXIS 229076, at *15–16 (C.D. Cal. Feb. 27, 2018); *Kelleher v. Kelleher*, No. 13-CV-5450-MEJ, 2014 WL 94197, at *6, 2014 U.S. Dist. LEXIS 2773, at *20 (N.D. Cal. Jan. 9, 2014); *Hyosung (America), Inc. v. Hantle USA, Inc.*, 2011 WL 835781, 2011 U.S. Dist. LEXIS 21935, at *7 (N.D. Cal Mar. 4, 2011).

California's predecessor to the current UVTA, "the UFTA[,] is not the exclusive remedy by which fraudulent conveyances and transfers may be attacked.  They may also be attacked by, as it were, a common law action."  *Macedo v. Bosio*, 86 Cal. App. 4th 1044, 1051 (Cal. Ct. App. 2001); *see also Mach-1 RSMH, LLC v. Darras*, 103 Cal. App. 5th 1288, 1304–05 (Cal. Ct. App. 2024) (concluding that section 3430.09(c) applies to actions under that chapter as well as common law actions and "any voidable transfer

action asserting the elements of a UVTA claim"). Also, more recent guidance from the California Court of Appeals suggests that California does not foreclose a common law fraudulent conveyance claim from proceeding as distinct from a UVTA claim. *Nagel v. Westen*, 59 Cal. App. 5th 740, 751–52, n.8 (2021) (citing *Berger v. Varum*, 35 Cal. App. 5th 1013, 1019 (2019)).

For these reasons, the Court denies the Defendants' motions to dismiss the common law fraudulent transfer claim as duplicative of or inseparable from the UVTA claim.

## C.   **Alter Ego Theory of Liability**

Defendants move to dismiss Plaintiff's third claim for relief for alter ego or "piercing the corporate veil" on grounds that Plaintiff fails to provide sufficient allegations and that the alleged allegations set forth a procedural claim rather than a separate cause of action.

"Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors. Under the alter ego doctrine, however, where a corporation is used by an individual . . . to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation." *Robbins v. Blecher*, 52 Cal. App. 4th 886, 892 (Cal. Ct. App. 1997) (citations omitted). "'Usually, a disregard of the corporate entity is sought in order to fasten liability upon individual stockholders.'" *Las Palmas Associates v. Las Palmas Ctr. Associates*, 235 Cal. App. 3d 1220, 1249 (Cal. Ct. App. 1991) (quoting *McLoughlin v. L. Bloom Sons Co., Inc.*, 206 Cal. App. 2d 848, 851 (Cal. Ct. App. 1962)). "Undercapitalization of the business, commingling of corporate and personal funds, and failure to observe the corporate formalities are examples of business practices that would leave individual shareholders vulnerable to a finding of alter ego liability." *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*, 217 Cal. App. 4th h

1096, 1107 (Cal. Ct. App. 2013) (citing 9 Witkin, Summary of Cal. Law, Corporations, §§ 9–15, pp. 785–94 (10th ed. 2005).

Under California law, a plaintiff must allege two factors sufficiently for alter ego liability to be imposed. *See Whitney v. Arntz*, 320 F.App'x 799, 800 (9th Cir. 2009) (memorandum disposition) (quoting *Wood v. Elling Corp.*, 20 Cal. 3d 353, 365 (1977)). First, the plaintiff must show "that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (Cal. 1985); *see also Integrity Med. Prod. Sols., LLC v. Seroclinix Corp.*, No. 22-CV-785-BAS-BLM, 2024 WL 1914361, 2024 U.S. Dist. LEXIS 79872 (S.D. Cal. May 1, 2024) (applying the two-step test to the single-enterprise rule as between two sister companies). Second, the plaintiff must allege "that, if the acts are treated as those of the corporation, an inequitable result will follow." *Mesler*, 39 Cal. 3d at 300; *Integrity Med. Prod. Sols.*, 2024 WL 1914361, at *4. Disregarding the corporate form is a case specific inquiry. *Mesler*, 39 Cal. 3d at 300; *McLoughlin*, 206 Cal. App. 2d at 853.

First, courts consider numerous factors to determine a unity of interest between the corporation and the individual, including "commingling of funds, failure to maintain minutes or adequate corporate records," and "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual, and the failure to adequately capitalize a corporation." *Pac. Mar. Freight, Inc. v. Foster*, 2010 WL 3339432, at *6, 2010 U.S. Dist. LEXIS 87205, at *17 (S.D. Cal. Aug. 24, 2010) (citing *Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838–40 (Cal. Ct. App. 1962)). "There is, however, 'no litmus test to determine when the corporate veil will be pierced.'" *Apple Inc. v. Allan & Associates Ltd.*, 44, 445 F. Supp. 3d 42, 52 (N.D. Cal. 2020) (quoting *Pac. Bell Tel. Co. v. 88 Connection Corp.*, 2016 WL 3257656, at *3, 2016 U.S. Dist. LEXIS 77345 (N.D. Cal. June 14, 2016)). "The identification of the elements of alter-ego liability plus two or three factors has been held sufficient to defeat a 12(b)(6) motion to dismiss." *Pac. Mar. Freight*, 2010 WL 3339432, at *6, 2010 U.S.

Dist. LEXIS 87205, at *17 (citing *Fed. Res. Bank of San Francisco v. HK Sys.*, No. C-95=1190, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997)); *see also Axon Solutions, Inc. v. San Diego Data Processing Corp.*, No. 09-CV-2543, 2010 WL 1797028, at *3 (S.D. Cal. May 4, 2010); *Automotriz Del Golfo De California, S.A. De C.V. v. Resnick*, 47 Cal.2d 792, 796 (1957) (finding unity of interest based on failure to issue stock and undercapitalization).

Here, Plaintiff alleges that John Cathcart, Nerys Logistics, and Mercator "should be treated as alter egos of each other and of [Nery's USA] and Com Nerys." (*Compl.* ¶ 73.) The Complaint alleges that John Cathcart owns and controls Nerys Logistics, the alleged "parent company" of Nery's USA so that Nerys Logistics was "at all relevant times formed, owned, operated, controlled, and dominated by Cathcart, was and is the alter ego of Cathcart, was and is united in interest with Cathcart, was and is subject to Cathcart's effective direction and control, and was and is operated by Cathcart as his alter ego." (*Id.* ¶ 11.) Allegedly, Cathcart continued to transfer money from Nery's USA to Nerys Logistics for years after Nerys Logistics stopped doing business. (*Id.* ¶ 37–38.) The Complaint alleges that Cathcart is the President and sole shareholder of Mercator and that Mercator received thousands of dollars weekly from Nery's USA, and its parent Nerys Logistics, for alleged management and consulting fees and that the funds were then transferred from Mercator to Cathcart for, in part, payment of his personal or family expenses. (*Id.* ¶¶ 40–47.)

Defendants argue three reasons render the allegations insufficient to support a alter ego theory of liability: (1) the ownership of all of a company's stock by one person and that person's control of all management decisions is insufficient to disregard the corporate entity; (2) the allegation that Nery's USA only ever made slight profit is insufficient to permit disregarding the entity's corporate form; and (3) allegations about payments from Nerys Logistics to Mercator are insufficient to show unity of interest because, instead, they support Cathcart's testimony that he was paid for management and consulting services. Cathcart allegedly "fleeced money from Com Nerys and [Nery's

USA] by making various transfers to the Cathcart Entities" and used "the Cathcart Entities for his own personal use," making it impossible for Plaintiff to collect on the Default Judgment. (*Id.* ¶¶ 49–52.)

Second, Plaintiff alleges that inequity will result if the fraudulent scheme and transfers are treated as made by the debtor entities, as opposed to by Cathcart, Mercator, and Nerys Logistics. (*Compl.* ¶ 72.) Nery's USA and Com Nerys are alleged to be "empty, uncollectable shells," as of the time of post-judgment discovery, and Plaintiff also alleges that the debtors "improperly transferred funds and otherwise disregarded the corporate form" to evade the Default Judgment. (*Id.* ¶ 29.)

The alleged fraudulent transfers by Nery's USA are connected to the alleged fraudulent transfers by the non-debtor Defendants on the factual allegations that each acted as part of a scheme to delay, hinder, or defraud Plaintiff's collection of the Default Judgment. (*See id.* ¶¶ 31–47.) The Complaint states alter-ego liability plus the following factors: commingling of funds and Cathcart's use of Mercator, Nerys Logistics, and Nery's USA for his individual purpose. The Complaint also alleges that Nery's USA and Com Nerys were under-capitalized. These allegations are sufficient for Plaintiff's alter ego theory of liability to survive dismissal, even if disputed facts ultimately prove otherwise. The Court notes that alter ego liability is a theory of liability rather than an independent cause of action. *See Ahcom, Ltd. v. Smeding*, 623 F.3d 1243, 1251 (9th Cir. 2010) (citing *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351 (1988)). The Court construes as sufficiently pled Plaintiff's theory of alter ego liability. Those factual allegations support Plaintiff's independently plead first and second causes of action rather than create a third cause of action.

### D.    The Stipulation to Award

Defendants argue that the terms of the Stipulated Award bar Plaintiff's claims as a matter of law. Specifically, Defendants quote the agreement's waiver of "any claim" arising in any way from the Agreement or performance on the Agreement. Defendants

argue the plain language of the agreement bars "any kind of claim for 'any amounts allegedly owed' against" a long list of entities related to Com Nerys and Nery's USA. (*Nerys Logistics Mot.* at 12–13; *Mercator Mot.* at 12–13.)   Plaintiff's Complaint is grounded on the independent obligation arising from the district court's entry of Default Judgment against ComNerys and Nery's USA.  At this initial pleading stage, there is no allegation in the Complaint supporting the inference that the Default Judgment barred enforcement of claims against such related entities.  While that defense may succeed at summary judgment, the Court cannot conclude on the face of the Complaint and reasonable inferences therefrom that Plaintiff's fraudulent transfer claims against Cathcart, Mercator, or Nerys Logistics are barred as a matter of law by the Stipulated Award.   For this reason, the Court declines to address the terms or impact of the Stipulated Award on the sufficiency of Plaintiff's Complaint.  The motions to dismiss on this ground are denied.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Defendants' motions to dismiss [**Doc. 3, 5**].

**IT IS SO ORDERED.**

Dated:  April 30, 2025

_____
Hon. Thomas J. Whelan
United States District Judge