JACK F. BURNS, Cal. Bar No. 290523
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
501 West Broadway, 18th Floor
San Diego, California 92101-3598
Telephone:  619-338-6588
jburns@sheppardmullin.com

J. MICHAEL HUGET, Mich. Bar No. P39150, Pro Hac Vice Admitted
RAECHEL T.X. CONYERS, Mich. Bar No. P80156, Pro Hac Vice Admitted
MORGAN L. ESTERS, Mich. Bar No. 83072, Pro Hac Vice Admitted
HONIGMAN LLP
2290 First National Buildings
660 Woodward Avenue
Detroit, Michigan 48226
Telephone:  313-465-7614
mhuget@honigman.com
rconyers@honigman.com
mesters@honigman.com

Attorneys for Plaintiff,
BLUE LINE FOODSERVICE
DISTRIBUTION, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| Blue Line Foodservice Distribution, Inc. | Case No. 24-cv-1250-W-MMP |
|---|---|
| Plaintiff, | Hon. Thomas J. Whelan<br>Magistrate Judge Michelle M. Pettit |
| v. | **BLUE LINE'S MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO QUASH** |
| John Cathcart, Nerys Logistics, Inc., Mercator Capital Advisors, Inc. | |
| Defendants. | **DISCOVERY MATTER** |
| | [*Filed concurrently with declaration of J. Michael Huget*] |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................ii

TABLE OF AUTHORITIES.................................................................................iii

I.     INTRODUCTION................................................................................... 1

II.    BACKGROUND...................................................................................... 1

       A.     Blue Line Filed the Arbitration............................................... 1

       B.     Blue Line Discovered Cathcart's Diversion of Funds to Various Entities Under His Control.................................................................2

       C.     Blue Line Sued in Michigan to Collect the Judgement. ...................... 4

       D.     Procedural History ...................................................................5

III.   ARGUMENT .......................................................................................... 7

       A.     The Subpoenas Seek Highly Relevant and Proportional Information..................................................................................8

       B.     Defendants' Judicial Estoppel Defenses Do Not Bar Discovery .......15

IV.    CONCLUSION ...................................................................................... 16

Case No. 24-cv-1250-W-MMP

BLUE LINE'S RESPONSE TO DEFENDANTS' MOTION TO QUASH

62235781.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A. Farber & Partners, Inc. v. Garber*,
    234 F.R.D. 186 (C.D. Cal. 2006) ....................................................................... 10

*Call of the Wild Movie, LLC v. Does 1-1,062*,
    770 F. Supp. 2d 332 (D.D.C. 2011) ..................................................................... 8

*Cuprite Mine Partners LLC v. Anderson*,
    809 F.3d 548 (9th Cir. 2015) ............................................................................... 8

*Dart Indus. Co. v. Westwood Chem. Co.*,
    649 F.2d 646 (9th Cir. 1980) ............................................................................... 9

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
    No. C 01-21151 JW, 2008 WL 4858502 (N.D. Cal. Nov. 10, 2008) ............... 10

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) ........................................................................... 14

*KFD Enters., Inc. v. City of Eureka*,
    No. 08-CV-4571, 2010 WL 11484695 at *8 (N.D. Cal. Nov. 12,
    2010) ................................................................................................................... 11

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ............................................................................. 8

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
    No. 19-CV-1865-GPC-DEB, 2021 WL 4691274 (S.D. Cal. Oct. 7,
    2021) ..................................................................................................................... 9

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*,
    256 F.R.D. 678 (C.D. Cal. 2009) ....................................................................... 13

*Nidec Corp. v. Victor Co. of Japan*,
    249 F.R.D. 575 (N.D. Cal. 2007) ......................................................................... 8

*Raymond James & Assocs., Inc v. Terran Orbital Corp.*,
    No. 819-CV-01916, 2020 WL 6083433 (C.D. Cal. June 10, 2020) .................. 12

-ii-

*In Re Subpoena of DJO, LLC*,
   295 F.R.D. 494 (S.D. Cal. 2014) ............................................................................. 8

*Supermail Cargo, Inc. v. United States*,
   68 F.3d 1204 (9th Cir. 1995) .................................................................................. 15

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   2008 WL 3876142 (N.D. Cal. 2008) ....................................................................... 10

*Vieste, LLC v. Hill Redwood Dev.*,
   No. 09-CV-04024, 2011 WL 855831 (N.D. Cal. Mar. 9, 2011) ........................... 12

*Williams v. Superior Court*,
   3 Cal. 5th 531 (2017) .............................................................................................. 15

*In re Yassi*,
   225 B.R. 478 (Bankr.C.D.Cal.1998) ...................................................................... 11

**STATUTES**

28 U.S.C. § 1404(a) ......................................................................................................... 5

Cal. Civ. Code § 3439.09 ......................................................................................... 14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) ............................................................................................... 8, 9

Fed. R. Civ. P. 45(d)(3)(A) ............................................................................................. 8

Fed. R. Evid. 401 ............................................................................................................. 9

Federal Rules of Civil Procedure 12(b)(2), (3), and (6) ................................................. 5

-iii-

## I.    INTRODUCTION

Defendants John Cathcart ("Cathcart") and Mercator Capital Advisors, Inc.'s ("Mercator") Motion to Quash is a transparent attempt to shield relevant financial records from discovery in a case in which the Court has already found that Blue Line Foodservice Distribution, Inc. ("Blue Line") sufficiently pled its claims for fraudulent transfer and alter ego liability.

Blue Line's narrowly tailored subpoenas to Bank of America, National Association ("Bank of America") and Charles Schwab & Co., Inc. ("Schwab") seek financial information that is directly relevant to the alleged fraudulent scheme through which Cathcart and Mercator diverted assets from the arbitration judgment debtors, Nery's USA Inc. ("Nerys USA") and Comercializadora Nerys De Mexico, S.A. de C.V. ("Com Nerys"), to avoid satisfying a $6.3 million judgment.  Blue Line's subpoenas are not overbroad, unduly burdensome, or invasive of Defendants' privacy rights, and importantly, they are essential to uncovering the financial trail that supports Blue Line's allegations.  These records are critical to establishing the scope, timing, and intent of Defendants' transfers and are proportional to the needs of the case.  Accordingly, the Court should deny Defendants' Motion to Quash.

## II.    BACKGROUND

### A.    Blue Line Filed the Arbitration

Blue Line is a U.S. food distributor, restaurant equipment, and restaurant supply provider.  (Compl. ¶ 4, Doc. 1.)  In 2012, after Nerys USA did not renew its

Case No. 24-cv-1250-W-MMP

contract with Blue Line, Blue Line entered into a five-year Distributer Agreement with Com Nerys, a Mexican entity (the "Agreement"). (See *id.*) Under the Agreement, Com Nerys served as Blue Line's preferred distributor for Little Caesars restaurants in Mexico. (*Id.* ¶ 20.) Nerys USA guaranteed Com Nerys' contractual obligations under the Agreement. (*Id.* ¶ 20.) Cathcart was the majority owner, CEO, and CFO of Nerys USA. (*Id.* ¶ 8.)

Eventually, Com Nerys breached the Agreement. (*Id.* ¶ 22.) As a result, in 2018, Blue Line brought an arbitration proceeding against Com Nerys and Nerys USA with the American Arbitration Association (the "Arbitration"). (*Id.*) Blue Line obtained a $6.3 million award in the Arbitration memorialized by the parties' Stipulation to Award (the "Judgment"). (*Id.* ¶¶ 23-24.)

### B. Blue Line Discovered Cathcart's Diversion of Funds to Various Entities Under His Control

Com Nerys and Nerys USA failed to pay the Judgment. (*Id.* ¶ 25.) As a result, Blue Line initiated post-judgment discovery to enforce and collect on the Judgment by registering it in the United States District Court for the Southern District of California. (*Id.* ¶ 26.) In post-Judgment discovery, Com Nerys and Nerys USA claimed to have virtually no assets—despite the more than $90 million gross profits earned by Com Nerys during the term of the Agreement. (*Id.* ¶ 27.) To date, neither Com Nerys nor Nerys USA have satisfied any portion of the Judgment. (*Id.* ¶ 28.)

In the 2021 and 2022 post-Judgment discovery, including through the debtors'

-2-

examinations, Blue Line discovered Com Nerys and Nerys USA's improper transfer of funds and other disregard for the corporate form to evade the Judgment and leave Com Nerys and Nerys USA as uncollectable shells. (*Id.* ¶¶ 29-30.) During Cathcart's deposition, he admitted that Nerys USA was undercapitalized and not profitable. (*Id.* ¶ 31.) In fact, Cathcart testified that in 2019, he personally loaned Nerys USA money to pay its attorneys' fees in the Arbitration because Nerys USA did not have enough funds to cover the costs itself. (*Id.*) Blue Line also discovered that Com Nerys and Nerys USA diverted substantial funds to Mercator and Nerys Logistics, Inc. ("Nerys Logistics") (together, the "Cathcart Entities") and that Cathcart used the judgment debtors, Com Nerys and Nerys USA, to pay his personal expenses. (*Id.* ¶ 33.)

Cathcart formed Nerys Logistics in 2011 and was the sole officer until June 2022. (*Id.* ¶ 34.) There are no written contracts with Nerys USA or Com Nerys that would document the transfer of funds between Cathcart, Nerys USA, Com Nerys, or Mercator. (*Id.* ¶ 35.) Moreover, Nerys Logistics ceased doing business in 2017— the same year that Blue Line terminated its relationship with Nery USA and Com Nerys and shortly before Blue Line began the Arbitration. (*Id.* ¶ 37.) Yet during the Arbitration, and for years after Nerys Logistics stopped doing business, Cathcart continued to transfer money from Nerys USA to Nerys Logistics. (*Id.* ¶ 38.)

Cathcart also transferred money from Nerys USA to Mercator for his personal benefit. (*Id.* ¶ 39.) Cathcart formed Mercator in 2012, the same year that Com Nerys

-3-

signed the Agreement with Blue Line. (*Id.* ¶ 40.) Cathcart is the President and sole shareholder of Mercator. (*Id.*) Cathcart testified that Nerys USA and its parent, Nerys Logistics, transferred thousands of dollars weekly to Mercator under the guise of fees for consulting and management, among other fees. (*Id.* ¶ 41.) Mercator then transferred these funds to Cathcart. No written contract, written agreement, or other documentation exists to support the more than $25,000.00 per month that Nery USA and Nerys Logistics transferred to Mercator, which then transferred the funds to Cathcart. (*Id.* ¶ 43.)

During Nerys USA and Mercator's relationship with Blue Line, Cathcart personally received several hundred thousand dollars from Nerys USA through Mercator for supposed "management fees." (*Id.* ¶ 44.) Mercator's bank statements show many transfers from Mercator to Cathcart's account for personal expenses. (*Id.* ¶ 45.) For example, Mercator's bank statements produced in the post-Judgment discovery show a $6,800.00 purchase at Fantasy Diamonds, a jeweler in New York. (*Id.* ¶ 46.) Even more, Mercator made monthly transfers to Cathcart's wife and adult children. All these transfers were funded by Nerys and carried out by the Cathcart Entities. (*Id.* ¶ 47.)

### C. Blue Line Sued in Michigan to Collect the Judgement.

On April 20, 2023, one year after learning of Cathcart's fraudulent transfers, Blue Line filed a complaint against John Cathcart, Com Nerys, Nerys USA, Nerys Logistics, and Mercator that is nearly identical to the Complaint. (**Exhibit 1**,

-4-

**Complaint and Demand for Jury Trial**, Case No. 2:23-cv-10925, ECF No. 1 (E.D. Mich.).)

On June 15, 2023, Cathcart and Mercator moved to dismiss under Federal Rules of Civil Procedure 12(b)(2), (3), and (6) for lack of personal jurisdiction, improper venue, and failure to state a claim.  (Case No. 2:23-cv-10925, ECF No. 17 (E.D. Mich.).)  In the alternative, Cathcart and Mercator requested that the court transfer the Case to the United States District Court for the Southern District of California in the interest of justice under 28 U.S.C. § 1404(a).  (*Id.*)

On July 20, 2023, Nery's USA filed a factually and legally similar motion to dismiss under Rules 12(b)(2), (3), and (6) or to transfer the case to the Southern District of California.  (Case No. 2:23-cv-10925, ECF No. 29 (E.D. Mich.).)

The Court granted Cathcart, Mercator, and Nery's USA's motions and dismissed Blue Line's Complaint for lack of personal jurisdiction.  (Case No. 2:23-cv-10925, ECF No. 32 (E.D. Mich.).)

On July 1, 2024, the court entered a Stipulation and Agreed Order of Dismissal as to Defendant Nery's Logistics, Inc. (the "Stipulated Dismissal") (Case No. 2:23-cv-10925, ECF No. 38 (E.D. Mich.).)

### D.    Procedural History

After the Stipulated Dismissal, Blue Line promptly refiled the Complaint just eighteen days later in this Court on July 19, 2024.  (See Doc. 1.)

On September 3, 2024, Defendants moved to dismiss.  (Cathcart and

-5-

Case No. 24-cv-1250-W-MMP

BLUE LINE'S RESPONSE TO DEFENDANTS' MOTION TO QUASH

62235781.1

Mercator's Motion to Dismiss, Doc. 3-1.)  The Court denied Defendants' Motion to Dismiss.  (Order Denying Motions to Dismiss, Doc. 24.)  In the Order, the Court found that Blue Line sufficiently pled its fraudulent conveyance claims.  (See *id.* at PageID.433 and PageID.444.)  Similarly, the Court found that Blue Line sufficiently pled alter ego liability.  (See *id.* at PageID.447).  And despite Defendants' continued insistence that Blue Line is judicially estopped from bringing the Complaint, the Court found that at the initial pleading stage, it could not conclude that Blue Line's claims were barred as a matter of law by the Stipulated Award.  (See *id.* at PageID.488.)

Since then, the parties have engaged in discovery, including serving written discovery requests and Blue Line's July 17, 2025, service of subpoenas to Cathcart's and Mercator's financial institutions, Schwab and Bank of America, respectively. The subpoenas requested documents from January 1, 2012 to the present related to Defendants bank records; transactions with Nerys Logistics, Com Nerys, and Nerys USA; and payments to and from Cathcart.  (See **Exhibit 2**, July 17, 2025 Bank of America Subpoena; see also **Exhibit 3**, July 17, 2025 Schwab Subpoena.)

After Blue Line served the July subpoenas, Defendants filed their first Motion to Quash (Doc. 56).  That motion contained virtually the same arguments as the present Motion.  But, after discussions with Magistrate Judge Michelle M. Pettit, the Court denied Defendants' initial motion and instructed the parties to meet and confer.  (Doc, 51, Minute Entry.)  While the parties made some progress in their

-6-

discussions, Defendants continued to maintain their positions, including that Blue Line has no right to *any* financial records of Cathcart and Mercator, the timeframe is purportedly "overbroad," and that Defendants can refuse production of the relevant materials central to Bue Line's case based on vague "privacy" concerns, among other things.

Ultimately, Defendants continued to reject all of Blue Line's proposals to narrow the July 17, 2025 subpoenas.  So, on September 5, 2025, Blue Line served new, narrowed, subpoenas on Schwab and Bank of America (the "Subpoenas"). (See Doc. 62-1, Bank of America Subpoena; Doc. 62-2, Schwab Subpoena.)  These Subpoenas explicitly carve out Cathcart's personal banking from the scope of the information requested.  (See *id.*)

Although the parties met and conferred about the Subpoenas multiple times, the parties continued to face the same obstacles as with the initial subpoenas in coming to an agreement.  As a result, on September 16, 2025, Defendants filed this Motion to Quash.  (Doc. 60, Defendants' Motion Quash Plaintiff's September 5, 2025 Subpoenas to Bank of America Nation Association and Charles Schwab & Company.)

## III.   ARGUMENT

Defendants' Motion to Quash fails for at least two reasons: (1) the Subpoenas are relevant and proportional as they seek critical financial information, and (2) judicial estoppel and the Stipulated Award do not bar Blue Line from its entitlement

-7-

to discovery.

### A. The Subpoenas Seek Highly Relevant and Proportional Information

Blue Line requests records that will confirm or refute its fraudulent transfer and alter ego claims.  In a diversity action such as this, the scope of permissible discovery is governed by federal law.  *Knievel v. ESPN*, 393 F.3d 1068, 1073 (9th Cir. 2005); see also *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015).

Federal Rule of Civil Procedure 45 permits a court to quash a subpoena that, among other things, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).  In evaluating whether a subpoena is unduly burdensome, "the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 354 (D.D.C. 2011); see also *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (providing that a court may quash a subpoena if the burden on the third party outweighs the likely benefit of the subpoena, "at least in the absence of a convincing showing that the subpoena is likely to yield unique and material evidence from the third party.").

A third-party subpoena issued under Rule 45 also is subject to the limitations

-8-

Case No. 24-cv-1250-W-MMP

BLUE LINE'S RESPONSE TO DEFENDANTS' MOTION TO QUASH

62235781.1

of Rule 26. See *Nidec Corp.*, 249 F.R.D. at 577; *In Re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014). The Court can limit the "extent of discovery otherwise allowed" if "the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient," or the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(c).

Relevance under Rule 26(b) is a "relatively low bar." *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19-CV-1865-GPC-DEB, 2021 WL 4691274, at *2 (S.D. Cal. Oct. 7, 2021). Proposed discovery is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The proportionality inquiry then balances the relevance of the information sought against the burden imposed on the responding person. *See* Fed. R. Civ. P. 26(b)(1). *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("courts may consider non-party status when determining whether discovery restrictions are necessary.") Courts must also consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely

-9-

benefit." Fed. R. Civ. P. 26(b)(1). Further, although Defendants do not deny that they have these records, nothing prevents Blue Line from discovering them from third parties:

> [T]here is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession. In fact, in appropriate circumstances, production from a third party will be compelled in the face of an argument that the same documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions.

*Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, *3 (N.D. Cal. 2008) (internal quotation marks omitted.) None of Defendants' arguments support the entry of an order quashing the Subpoenas.

### 1.    Defendants are not entitled to preclude discovery based on generalized privacy concerns.

*First*, Defendants rely on generalized statements about privacy interests that they claim through the financial documents. But this is not a basis to withhold relevant records. See *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW, 2008 WL 4858502, at *4–5 (N.D. Cal. Nov. 10, 2008) (where a protective order was in place, the court required defendants to produce financial documents relevant to plaintiffs' alter ego claims over defendants' objections.) Blue Line's need for information related to Defendants' financial transactions outweighs Defendants' privacy claims. See *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) ("plaintiff's need for defendant Garber's financial

-10-

documents outweighs defendant Garber's claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a "carefully drafted" protective order."); see also *In re Yassi*, 225 B.R. 478, 483 (Bankr.C.D.Cal.1998) ("[W]hatever right to privacy Movants may have in the [financial] information sought pursuant to the subpoenas is insufficient to prevent discovery of that information ....").

Defendants' privacy objections are unavailing. Although Blue Line is under no obligation to do so, Blue Line has offered to allow redactions of irrelevant personal transactions such as groceries, utilities, and medical expenses, and to limit the scope of the requests to business-related transfers. Courts routinely permit the discovery of personal financials in the face of alter ego claims. See *KFD Enters., Inc. v. City of Eureka*, No. 08-CV-4571 MMC (JL), 2010 WL 11484695 at *8 (N.D. Cal. Nov. 12, 2010) (ordering the production of financial records that demonstrated the financial relationship between the corporate plaintiff and its sole shareholder as it was relevant to defendant's claims and defenses—including alter ego liability.)

Even with these proposals to narrow the requests, Blue Line's efforts to reach compromise have been flatly rejected by Defendants based on their baseless assertion that none of their financial records are relevant. Defendants' privacy argument is particularly baseless because the parties are already subject to a protective order, which governs treatment of sensitive materials. (See Doc. 54, Order Granting Joint Motion for Protective Order.)

-11-

**2.   Blue Lines seeks the discovery of records relevant to the claims and defenses at issue,**

*Second*, Defendants argue that the discovery sought is irrelevant.  But that argument is also unavailing: Blue Line's requests are directly tied to Blue Line's claims and are limited to the period from 2012 to the present.  Blue Line has a right to test the legitimacy of Defendants' representations about their financial transactions.  Courts routinely permit discovery of financial information to establish the existence of information supporting alter ego liability.  See *Vieste, LLC v. Hill Redwood Dev.*, No. 09-CV-04024, 2011 WL 855831, at *3–4 (N.D. Cal. Mar. 9, 2011) (permitting alter ego discovery of employee data, bank account, and other financial information even if only subject to a protective order); see also *Raymond James & Assocs., Inc v. Terran Orbital Corp.*, No. 819-CV-01916, 2020 WL 6083433, at *4 (C.D. Cal. June 10, 2020) ("There is no threshold showing required to obtain discovery from a third-party with knowledge of the judgment debtor's finances, such as a former accountant or bank.")

The documents sought will help shed light on the extent that Defendants diverted money from the Judgment Debtors for Cathcart's personal gain and to evade the Judgment.  Defendants have not produced this information, although Blue Line requested it in its requests for production.  (See **Exhibit 4**, Blue Line's First Set of Requests for Production to Cathcart ¶¶ 2-16; **Exhibit 5**, Blue Line's First Set of Requests for Production to Mercator ¶¶ 3-6.)  And Defendants have made various

-12-

BLUE LINE'S RESPONSE TO DEFENDANTS'
MOTION TO QUASH

62235781.1

representations that they may no longer have access to some of this information given the passage of time.  (Declaration of J. Michael Huget.)

So not only do the Subpoenas request relevant information, the discovery is also proportionate to the needs of the case.  The Subpoenas and the requests contained therein are narrowly tailored and the benefits of discovery far outweigh any associated burden or expense.  Blue Line has issued just two subpoenas, each to a financial institution with relationships to the parties.  The Subpoenas accordingly request that the banks provide financial records to show Cathcart and Mercator's compensation and income derived from their relationship with the judgment debtors.  Defendants have not provided this information through the parties' discovery and, in some instances, claim that they cannot do so.  Further, the amount in controversy justifies third-party discovery and the documents would not be burdensome to produce.  Blue Line claims several million dollars in damages related to Defendants' fraudulent scheme.  *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009) ("The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.")  Defendants have not met and cannot meet this burden.

### 3.    Blue Line appropriately scoped the Subpoenas.

*Third*, the 2012 to the present timeframe in the Subpoenas is relevant and proportional to Blue Line's claims.  This timeframe reflects that of the alleged

-13-

transfers and consulting arrangements among Cathcart, Mercator, Nerys Logistics, and the Judgment Debtors.  Although Cal. Civ. Code § 3439.09, the statute of limitations, permits discovery of transfers made within seven years, it may be extended by equitable tolling.  Tolling applies because of the Defendants' concealment of the fraudulent conveyances.  "Equitable tolling under California law is a judicially created doctrine that operates to suspend or extend a statute of limitations in order to ensure that a limitations period is not used to bar a claim unfairly."  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th Cir. 2009).  "Three factors are taken into consideration when deciding whether to apply equitable tolling under California law: (1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim."  *Id.*

Equitable tolling applies here because: (1) Nerys Logistics had timely notice of the underlying allegations in the nearly identical complaint filed in the Eastern District of Michigan in 2023; (2) Nerys Logistics has not been prejudiced in gathering evidence to defend against this Complaint; and (3) Blue Line timely filed the Complaint just more than two weeks after the voluntary dismissal in the Eastern District of Michigan.

Blue Line's proposed timeframe is reasonable.  Still, if the Court believes that Blue Line should narrow the timeframe of its requests, Blue Line suggests a

-14-

timeframe from 2016 to the present. This narrowed timeframe represents seven years before Blue Line's 2023 filing in the United States District Court for the Eastern District of Michigan and thus complies with the statute of limitations outlined in Cal. Civ. Code § 3439.09. Ultimately, the application of equitable tolling is a factual issue that the Court should decide *after* discovery and should not serve as a barrier to prevent discovery. See *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206–07 (9th Cir. 1995) (explaining that the Ninth Circuit "ha[s] reversed dismissals where the applicability of the equitable tolling doctrine depended upon factual questions not clearly resolved in the pleadings".)

Thus, the Subpoenas are relevant, proportional, and necessary.

### B.   Defendants' Judicial Estoppel Defenses Do Not Bar Discovery

Defendants' Motion to Quash is essentially its attempt to relitigate the issues already addressed by the Court in its Order Denying Defendants' Motion to Dismiss. Defendants argue that Blue Line is judicially estopped from pursuing claims against Cathcart and Mercator because of a prior stipulation. However, Blue Line's claims arise from post-Judgment conduct and fraudulent transfers that were unknown and undiscoverable at the time of the arbitration. The stipulation does not immunize Defendants from liability for fraudulent conduct.

Defendants' Motion conflates their belief about the merits of the strengths and weaknesses of Blue Line's claims, but Defendants' beliefs are immaterial to the discoverability of the requests in the Subpoenas. See *Williams v. Superior Court*, 3

-15-

Cal. 5th 531, 511 (2017) ("[I]t is well established that relevancy of the subject matter does not depend upon a legally sufficient pleading, nor is it restricted to the issues formally raised in the pleadings.")

Accordingly, Defendants' renewed attempt to avoid discovery by reasserting the arguments already rejected by the Court in their Motion to Dismiss should be rejected. Blue Line is entitled to pursue alter ego and fraudulent transfer claims against those who received the benefit of the diverted assets.

The Court should not stay discovery pending dispositive motions. Defendants argue that the Subpoenas are premature because they have meritorious defenses that they believe will resolve this case once presented. But this ignores the reality that discovery is not stayed and the Court is well aware that discovery is ongoing. As described above, Blue Line has a right to pursue relevant third-party discovery to support its claims. Defendants have not shown good cause to delay or deny the discovery Blue Line seeks through the Subpoenas.

-16-

## IV.   CONCLUSION

The Subpoenas are narrowly tailored, relevant, and proportional.  They are also critical to Blue Line's ability to uncover the financial misconduct that it alleged. Blue Line respectfully requests that the Court **DENY** Defendants' Motion to Quash and allow the Subpoenas to proceed.

Dated:  September 30, 2025

By:   _____

Jack F. Burns (Cal. Bar No. 290523)
J. Michael Huget (Pro Hac Vice Admitted)
Raechel T.X. Conyers (Pro Hac Vice Admitted)
Morgan L. Esters (Pro Hac Vice Admitted)

*Attorneys for Plaintiff Blue Line Foodservice Distribution, Inc.*

-17-

Case No. 24-cv-1250-W-MMP

BLUE LINE'S RESPONSE TO DEFENDANTS' MOTION TO QUASH

62235781.1