UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE LINE FOODSERVICE DISTRIBUTION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JOHN CATHCART, et al.,<br><br>Defendants. | Case No.: 24-cv-1250-W-MMP<br><br>**ORDER DENYING DEFENDANTS' MOTION TO QUASH AND NARROWING PLAINTIFF'S SEPTEMBER 5, 2025 SUBPOENAS TO BANK OF AMERICA NATION ASSOCIATION AND CHARLES SCHWAB & COMPANY**<br><br>[ECF No. 60] |

Pending before the Court is Defendants John Cathcart and Mercator Capital Advisor's Inc.'s ("Defendants") Motion to Quash Blue Line Foodservice Distribution, Inc.'s ("Plaintiff") September 5, 2025 Subpoenas to Bank of America, Nation Association and Charles Schwab & Company. ECF No. 60. Plaintiff filed an opposition, to which Defendants replied. ECF Nos. 63, 65. The Court found the motion suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1) and stayed compliance with the subpoenas pending the Court's ruling on the motion to quash. ECF No. 61. For the reasons set forth below, the Court **DENIES** the Motion to Quash and **NARROWS** the subpoena requests.

1

## I. RELEVANT BACKGROUND

The Court previously set forth the relevant factual background in its April 30, 2025 Order, which it incorporates herein. ECF No. 24 at 2–5. The Court includes an abbreviated factual background relevant to the Motion to Quash below.

### A. Underlying Agreement

In 2010, Plaintiff entered into a distribution contract with Nery's USA. ECF No. 60-2 at 3. Nery's USA was unable to renew its contract in 2012 "due to losses on the distribution and under payment by [Plaintiff]." *Id*. Nery's USA suggested Plaintiff replace Nery's USA with Com Nery's. *Id.*

In 2012, Plaintiff entered a five-year distributor agreement (the "Agreement," (ECF No. 3-2)) with Com Nerys and Nery's USA. ECF No. 1 ¶ 4. Under the Agreement, Com Nerys became Plaintiff's "preferred distributor" for Little Caesars franchise restaurants in Mexico, and "Nerys [USA] was the Guarantor for Com Nery's contractual obligations." *Id.* ¶ 20.

### B. Default Judgment Entered in Michigan

Com Nerys and Nery's USA allegedly breached the Agreement. *Id.* ¶ 22. Therefore, in 2018, Plaintiff filed its first complaint in the District Court for the Eastern District of Michigan for arbitration. *Id.* ¶ 22, 24. The parties reached a Stipulated Award in favor of Plaintiff and against Com Nerys and Nery's USA, jointly and severally, for $6,342,402.63. *Id.* at 15–16. The Stipulated Award contains this language:

> [E]ach party represents and warrants, that any and all claims . . . between Blue Line and Nerys (including any of their respective parents, subsidiaries, affiliates, directors, managers, officers, executives, shareholders, members, partners, heirs, beneficiaries, relatives, employees, agents, representatives, insurers, predecessors, attorneys, successors or assigns) in any way arising from that certain Distributor Agreement dated October 2010 and/or that certain Distributor Agreement dated February 14, 2012, and/or any party's performance thereunder . . . are subsumed within and disposed of by the Award, and that neither Blue Line nor Nerys possesses any claim against the other separate from or additional to those determined by the Award.

ECF No. 60-1 at 3–4.

On October 5, 2020, the district court entered the arbitration award amount as a final default judgment against Com Nerys and Nery's USA. ECF No. 1 ¶¶ 1, 5, 24. The Default Judgment did not incorporate the Stipulated Award and did not contain terms of the Stipulated Award beyond the award amount and liability as joint and several. ECF No. 24 at 2.

### C. Com Nerys and Nery's USA Do Not Pay Plaintiff

Following the Stipulated Award, Com Nerys and Nery's USA failed to pay Plaintiff. ECF No. 1 ¶¶ 5, 6. Plaintiff conducted a post-judgment debtor's examination. *Id*. ¶ 7. Through discovery, Plaintiff alleges it learned John Cathcart, a defendant in this case but not the prior case and the majority owner, CEO, and CFO of Nery's USA, "had under-capitalized [Nery's USA] and Com Nerys, disregarded the corporate form, and transferred money through a maze of related entities, Defendants [Mercator and Nerys Logistics] to enrich himself and evade" the Default Judgment. *Id*. ¶ 8. Plaintiff alleges "at Cathcart's direction, [Nery's USA] and Defendants willfully and fraudulently transferred a substantial amount of [Nery's USA's] assets for grossly low or even no consideration at all, with the goal of defrauding Blue Line and thwarting its ability to enforce the [Default] Judgment against [Nery's USA] and Com Nerys." *Id*. ¶ 9.

### D. Procedural History

On April 20, 2023, Plaintiff filed a second complaint in the District Court for the Eastern District of Michigan, similar to the one in this case, alleging fraudulent transfer. ECF No. 24 at 4. The district court dismissed the complaint for lack of personal jurisdiction over Cathcart, Nery's USA, Mercator, and later Nery's Logistics. *Id*.

Plaintiff then filed its Complaint in this case on July 19, 2024. ECF No. 1. Plaintiff alleges three causes of action against Defendants: (1) fraudulent transfer under the California Uniform Voidable Transactions Act, Cal. Civ. Code Section 3439.04 ("UVTA"), (2) common law fraudulent conveyance, and (3) alter ego liability. *Id*. Plaintiff alleges it is a creditor of Com Nerys and Nery's USA. *Id*. ¶ 56. Plaintiff claims Defendants "willfully and fraudulently transferred a substantial amount of Nerys's assets for grossly

low or even no consideration at all, with the goal of defrauding Blue Line and thwarting its ability to enforce the Judgment against Nerys [USA] and Com Nerys." *Id.* ¶ 9.

The Complaint also alleges connections between the Default Judgment debtors and the parties in this case. Cathcart is allegedly the majority shareholder of Nery's USA and the sole shareholder of Mercator. *Id.* ¶ 13.

### E. **Discovery Dispute**

The parties first raised a discovery dispute with the Defendants' previous Motion to Quash Plaintiff's July 17, 2025 Subpoenas ("July Subpoenas") to Bank of America, Nation Association ("BofA") and Charles Schwab & Company ("Schwab"). ECF No. 47. The Court denied the Motion, ordering the parties to meet and confer to resolve or narrow the issues presented and, if that did not resolve all issues, permitting Defendants to refile a revised Motion to Quash. ECF No. 52.

The meet and confer attempts were unsuccessful in resolving the dispute. Defendants allege "some progress was made regarding limiting the scope of the Subpoenas," but there remained a "fundamental disagreement" regarding "the discoverability of documents going as far back as 2012, and the discoverability of any financial information from Mercator and Cathcart apart from transactions with Nerys USA and Com Nerys." ECF No. 60 at 9.

Plaintiff served the instant subpoenas on September 5, 2025 to non-parties BofA and Schwab. ECF No. 63 at 11.

The September 5 subpoena to BofA requests the following in relevant part:

1. All bank records of Mercator Capital Advisors, Inc. ("Mercator") from January 1, 2012 to the present, including but not limited to bank statements, checking and savings account statements, and debit and credit card information.

2. All Documents concerning payments and/or transfer of funds or other things of value related to Mercator and Nerys Logistics, Inc. ("Nerys Logistics"), Comercializadora Nerys De Mexico, S.A. DE C.V. ("Com Nerys"), and Nery's USA Inc. ("Nerys USA").

    3.    All documents reflecting income received by John Cathcart ("Cathcart") from January 1, 2012 to the present, from the following: Mercator, Nerys Logistics, Com Nerys, and Nery's USA.

    4.    All Documents concerning payments and/or transfer of funds or other things of value related to Cathcart from January 1, 2012 to the present.

ECF No. 62-1 at 5–6.

The September 5 subpoena to Schwab requests the following in relevant part:

    1.    All documents reflecting income received by John Cathcart ("Cathcart") from January 1, 2012 to the present, from the following: Capital Advisors, Inc. ("Mercator"), Nerys Logistics, Inc., Comercializadora Nerys De Mexico, S.A. DE C.V., and Nery's USA Inc.

    2.    All Documents concerning the transfer of funds or other things of value related to Cathcart and Mercator, Nerys Logistics, Inc., Comercializadora Nerys De Mexico, SA DE C.V., and Nery's USA Inc. from January 1, 2012 to the present.

ECF No. 62-2 at 5.

Defendants move to quash the September 5 Subpoenas to both BofA and Schwab based on two primary arguments. ECF No. 60. First, Defendants allege they have defenses that will result in dismissal of the Complaint, and no further discovery should be produced until the Court can hear these defenses. *Id.* at 9–19. Second, Defendants argue the non-party subpoenas do not meet the relevance and proportionality hurdles under Federal Rule of Civil Procedure ("Rule") 26(b)(1) and improperly intrude on parties' and non-parties' privacy rights. *Id.* at 19–22.

Plaintiff opposes the motion. ECF No. 63. Plaintiff contends the subpoenas at issue are more narrowly tailored than the July 17 Subpoenas. *Id.* at 11. Specifically, Plaintiff claims "Cathcart's personal banking" is carved out from the scope of information requested. *Id.* Plaintiff contends: (1) the subpoenas seek relevant, proportional information not precluded by privacy interests, and (2) Defendants' merits-based defenses are not a bar

to discovery. *Id.* at 11–12. Plaintiff contends the subpoenaed records will confirm or refute its fraudulent transfer and alter ego claims. *Id*. at 12.

In addition, the parties dispute the appropriate time period for the subpoenas. Both the BofA and Schwab September subpoenas request documents from January 1, 2012 to present. ECF Nos. 62-1 at 5–6; 62-2 at 5. Plaintiff argues this proposed timeframe is reasonable, and should the Court find otherwise, Plaintiff suggests a timeframe of "2016 to the present." ECF No. 63 at 18–19. Defendants claim no transactions before 2017—when the contract between Plaintiff and Com Nerys ended—could possibly be relevant, and the more appropriate year is 2023, when Plaintiff first made a claim against Defendants. ECF No. 60 at 12, 18–19.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure[1] 45 governs discovery of non-parties by subpoena. *See* Fed. R. Civ. P. 45. "A non-party witness is subject to the same scope of discovery under Rule 45 as a party is under Rule 34." *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014) (citing Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970)). Under Rule 34, the rule governing document requests between parties, the proper scope of discovery is set forth in Rule 26(b). *Id.*; *see also Chevron Corp. v. Donziger*, No. 12-mc-80237-CRB-NC, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) ("The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 34, which in turn is the same as under Rule 26(b).").

Rule 26(b), in turn, sets forth the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely

---

[1] All further references to "Rule" are to the Federal Rules of Civil Procedure unless expressly stated otherwise.

    benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

  In addition to the discovery standards under Rule 26 which are incorporated by Rule 45, Rule 45 provides "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv); *see In re Subpoena of DJO*, 295 F.R.D. at 497.

  "The Federal Rules specifically require parties to avoid creating undue burdens on third parties via subpoenas." *Akkawi v. Sadr*, No. 20-cv-1034-MCE-AC, 2022 WL 17722605, at *2 (E.D. Cal. Dec. 15, 2022). Rule 45(d)(1) provides "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Further, "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (citation modified). The Ninth Circuit has "interpret[ed] 'undue burden' as the burden associated with compliance." *Mount Hope Ch. v. Bash Back!*, 705 F.3d 418, 427 (9th Cir. 2012) (citing *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813–14 (9th Cir. 2003)). While courts are "sensitive to the imposition of large discovery costs on non-parties" and identify the "special need to protect them," the Ninth Circuit has declined to read "undue burden" differently just because a non-party was subpoenaed. *Id.* at 429.

  On a motion to quash a subpoena, the movant has the burden of persuasion "but the party issuing the subpoena must demonstrate the discovery sought is relevant." *Chevron Corp.*, 2013 WL 4536808, at *4; *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).

## III. ANALYSIS

Defendants assert two grounds for quashing the non-party subpoenas: (1) their likely success on pretrial motions, and (2) objections related to relevance, proportionality, and privacy. The Court addresses each in turn.

### A. **Defenses**

As a preliminary matter, Defendants assert two defenses relating to the merits of their claims: judicial estoppel and failure of Plaintiff's alter ego claim. Defendants seek to quash the subpoenas because their defenses "will result in the dismissal or drastic restriction" of Plaintiff's claims. ECF No. 60 at 14. Therefore, Defendants argue, at minimum, "discovery into [Defendants'] financial transactions should be stayed until the appropriate motions are heard" to determine if Plaintiff can continue with the action. *Id.* The Court finds neither anticipated defense warrants delaying discovery in this action.

#### 1. Judicial Estoppel

Defendants claim the language of the Stipulated Award prohibits Plaintiff's lawsuit against Defendants, yet Plaintiff affirmed the agreement to obtain the Judgment at the center of this lawsuit. ECF No. 60 at 14–15. According to Defendants, Plaintiff agreed not to sue anyone related to Nerys USA, including Cathcart and Mercator, and therefore is judicially estopped from suing Mercator and Cathcart in this action. *Id.* at 15. In essence, Defendants contend Plaintiff ignores a material element of the Stipulated Award while using the award as a sword. *Id*. Defendants argue the doctrine of judicial estoppel prevents Plaintiff from "affirming the contract before one court" and "claiming it is not enforceable before a later court." ECF No. 65 at 6. The Court provides a brief history of the proceedings underlying this argument.

At the motion to dismiss stage, Defendants claimed the terms of the Stipulated Award barred Plaintiff's claims as a matter of law. ECF No. 24 at 22. Defendants argued the plain language of the Stipulated Award bars "any kind of claim for 'any amounts allegedly owed' against" a long list of entities related to Com Nerys and Nery's USA. ECF No. 24 at 22–23. The Court determined it could not "conclude on the face of the Complaint

8

and reasonable inferences therefrom that Plaintiff's fraudulent transfer claims against Cathcart, Mercator, or Nerys Logistics are barred as a matter of law by the Stipulated Award" and declined "to address the terms or impact of the Stipulated Award on the sufficiency of Plaintiff's Complaint." ECF No. 24 at 23. The Court acknowledged the defense may succeed at summary judgment. *Id*.

Defendants now argue the subpoenas at issue should be quashed because Plaintiff is "judicially estopped, as a matter of law, from disavowing its promise not to sue, and suing Mercator and Cathcart in this action." ECF No. 60 at 11.

In response, Plaintiff contends Defendants attempt to relitigate issues from the Motion to Dismiss and Defendants' beliefs about the merits of its case are "immaterial to the discoverability" of the subpoena requests. ECF No. 63 at 19–20.

This Court agrees with Plaintiff; attempts to re-litigate arguments regarding the Stipulated Award language and "judicial estoppel" at this juncture are not persuasive. ECF Nos. 60, 63, 65. Defendants also fail to establish good cause to stay discovery until the Court rules on their anticipated pretrial motions. ECF No. 60 at 14. Though district courts have "broad discretion to stay discovery in a case while a dispositive motion is pending," *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) (internal citation omitted), courts generally consider whether (1) the pending motion is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed" and (2) "the pending, potentially dispositive motion can be decided absent additional discovery." *Mlejnecky v. Olympus Imaging America, Inc.*, No. 10-cv-02630-JAM-KJN, 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011). Here, no dispositive motion has been filed, and more discovery may be necessary to litigate a motion for summary judgment. Therefore, a request to stay discovery would be premature.

Defendants' arguments related to the likely success of a dispositive motion at the discovery stage of the proceedings are also not persuasive. Indeed, the relevant Federal Rules regarding third-party subpoenas—Rule 26(b), 34, and 45—do not support denying discovery based on a party's beliefs about the merits of their arguments. To the extent

Defendants assert judicial estoppel is a threshold legal issue in this action, nothing prevents them from raising the substance of their defenses with the Court through an early dispositive motion. However, the Court declines Defendants' attempt to shoehorn a determination on the merits of their defenses through a motion to quash a third-party subpoena.

        2. <u>Alter Ego</u>

Similarly, Defendants' argument "alter ego liability cannot attach if to do so would be inequitable and unjust in light of [Plaintiff's] promise not to sue," rises and falls on the interpretation of the parties' Stipulated Award and its bearing on the causes of action. ECF No. 60 at 16. This Court is not persuaded to summarily quash the subpoenas because Defendants unilaterally declare "when [Defendants] have the opportunity to present [alter ego liability] defense to the court, [Plaintiff's] spurious litigation will come to a halt." *Id.* at 17. Whether or not Defendants' alter ego defense ultimately prevails on the merits is not dispositive of the discovery analysis. *See* Fed. R. Civ. P. 26(b)(1). *See e.g., Malibu Media, LLC v. Does 1-25*, No. 12-cv-0362-LAB-DHB, 2012 WL 2367555 at *2-3 (S.D. Cal. June 21, 2012)(declining to quash subpoena based on lack of personal jurisdiction and misjoinder); *Third Degree Films, Inc. v. Does 1-178*, No. C 12-3858-EMC-MEJ, 2012 WL 12925674 at *3 (N.D. Cal. Dec. 6, 2012)(declining to quash subpoena based on defendants' presentation of evidence to "corroborate their denial of liability"). As the alter ego cause of action was not dismissed at the motion to dismiss stage, and no pretrial motions have been filed, Defendants' arguments regarding the strength of its defenses on this claim are insufficient to quash the non-party subpoenas. *Malibu Media, LLC v. Does 1-59*, No. 12-cv-0888-AWI-DLB, 2012 WL 4465359 at *3 (E.D. Cal. Sept. 25, 2012)(refusing to quash subpoena based on defendants' fact-based defenses).

Furthermore, the Court finds unpersuasive Defendants' specific argument that financial transactions between Mercator and Cathcart unrelated to Nerys USA provide no support for the alter ego claim. ECF No. 60 at 10. The Complaint includes allegations Cathcart received money transfers from Mercator for his personal expenses ECF No. 1 ¶

45. Additionally, the Complaint alleges more than $25,000 a month were transferred from Nery's USA and Nerys Logistics to Mercator and then to Cathcart. *Id.* ¶ 43. Therefore, the Court finds the subpoena requests for transactions between Mercator, Cathcart, Nerys Logistics, Com Nerys, and Nery's USA are well within the permissible scope of obtainable discovery. Fed. R. Civ. P. 26(b)(1). The requests directly relate to "the transfer of funds or other things of value related to Cathcart and Mercator, Nerys Logistics, Inc., [Com Nerys] and Nery's USA Inc." and are highly relevant to Plaintiff's claims as specifically alleged in the Complaint. ECF Nos. 62-1 at 5; 62-2 at 5.

### B. Merits of the Motion to Quash

#### 1. Analysis – Relevance and Proportionality

A subpoena issued under Rule 45 must be relevant to the party's claim. *Dominguez v. Corp. of Gonzaga Univ.* (Gonzaga Univ.), No. 17-cv-00286-SAB, 2018 WL 3338181, at *1 (E.D. Wash. Apr. 19, 2018); Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970); Fed. R. Civ. P. 26(b)(1). The party seeking to compel discovery has the burden of establishing it meets the relevance requirement of Rule 26. *Marin v. San Diego State Univ.*, No. 21-cv-1445-JO-MMP, 2024 WL 2061727 at *2 (S.D. Cal. April 19, 2024). Relevance is an "exceedingly low bar." *In re Bofl Holding, Inc. Sec. Litig.*, No. 15-cv-2324-GPC-KSC, 2021 WL 4460751 at *3 (S.D. Cal. Sept. 29, 2021).

A subpoena issued pursuant to Rule 26(b)(1) must also be proportionate to the needs of the case. *Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*, No. 15-cv-1282-L-WVG, 2016 WL 4485568 at *5 (S.D. Cal. Aug. 19, 2016); Fed. R. Civ. P. 26(b)(1); Adv. Comm. Notes to 2015 Amendment to Rule 26(b)(1). Rule 26(b)(1) identifies the following factors for consideration when determining if the proportionality requirement is satisfied: "the importance of the issues at stake in the action; the amount in controversy; the parties' relative access to the relevant information; the parties' resources; the importance of the discovery in resolving the issues; and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019). The party resisting discovery "has the burden to show that discovery should

not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).

Defendants make various arguments regarding the timeframe and scope of the subpoenas to assert they are not relevant or proportional to the needs of the case, which the Court addresses in turn. ECF No. 60 at 19–21.

                i.        Timeframe of the Requests

First, Defendants argue the subpoenas seek documents from a timeframe that is irrelevant and thus not proportional to the needs of the case. ECF No. 60 at 19–20. "[T]he gravamen of Plaintiff's case is the allegation that [Defendants] fraudulently transferred assets from the judgment debtor . . . in order to place those assets beyond [Plaintiff's] ability to collect its judgment." *Id.* at 20. Defendants state since they were unaware of any dispute between Plaintiff and Com Nerys until July 2017 and were unaware of any claims of "wrongfully transferred asset[s]" until 2023, they lacked the required intent to place assets "beyond the reach of creditors" earlier than 2017. *Id.*

Defendants further assert the subpoenas seek irrelevant information "based on applicable statute of limitations and statute of repose" and are overbroad "where the period is from 2012 to present, a thirteen (13) year span." *Id.* Defendant relies on *Goodin v. City of Glendora* where the court narrowed a broad interrogatory request for ten years of warrantless home entries in Glendora to "citizen complaint files regarding any alleged improper search and seizures by" defendants for *five* years prior to the incident. No. 17-cv-3567-FMO-PLA, 2017 WL 10560490 at *5 (C.D. Cal. Dec. 13, 2017). This Court finds the warrantless home entry by law enforcement in *Goodin* is a far cry from the claims involving fraud, alter ego, and banking records requested here and is not persuasive in this case.

In its opposition, Plaintiff asserts the 2012 to present timeframe "reflects that of the alleged transfers and consulting arrangements among Cathcart, Mercator, Nery Logistics, and the Judgment Debtors." ECF No. 63 at 17–18. Both parties acknowledge California Civil Code Section 3439.09 is at play, and Plaintiff suggests a narrowing of the request

timeframe to 2016 to present. ECF No. 60 at 20-21; ECF No. 63 at 18–19. Section 3439.09(c) details "[a] cause of action under this chapter with respect to a transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred." Plaintiff asserts equitable tolling extends the seven-year ceiling because "(1) Nerys Logistics had timely notice of the underlying allegations in the nearly identical complaint filed in the Eastern District of Michigan in 2023; (2) Nerys Logistics has not been prejudiced in gathering evidence to defend against this Complaint; and (3) Blue Line timely filed the Complaint just more than two weeks after the voluntary dismissal in the Eastern District of Michigan." ECF No. 63 at 18–19.

The Court need not make a specific finding as to the statute of limitations or equitable tolling to conclude the subpoenas' timeframe seeks discovery relevant and proportional to Plaintiff's claims if narrowed. Based on the facts in this case, the Court does not accept Defendants' representation they "had no inkling [a debt] was on the horizon until as late as 2023." ECF No. 60 at 19. On the other hand, there has not been a showing of an event to trigger Nerys USA's guarantee during the five-year contract period to incentivize Defendants to proactively avoid potential creditors. *Id.* at 18. There can be no question that by the commencement of the arbitration in 2018, Defendants would have been aware of a possible future debt. After the resolution of the arbitration in 2020, Plaintiff pursued judgment collection against Com Nerys and Nerys USA, and in 2023, Plaintiff raised allegations against Defendants from its debtor exam findings. *Id.* These allegations include Defendants diverting money "from the Judgment Debtors for Cathcart's personal gain and to evade the Judgment." ECF No. 63 at 16. The incentive to divert money would not reasonably have existed as early as 2012 but likely existed sometime before the commencement of arbitration in 2018.

As Plaintiff's first lawsuit to collect the judgment was in 2023, the Court finds records back to 2016 (seven years from the first lawsuit) align with both parties' interpretation of Cal. Civ. Code Section 3439.09(c). *Id.* at 19. Additionally, records from 2016 to present are proportional to the needs of the case. The subpoenaed records are

important in resolving Plaintiff's claims and correlating with the allegations in the Complaint. The seven years of records is also proportionate to the amount in controversy—over six million dollars—and over three years of litigation across two states. Therefore, the Court narrows all subpoena requests to April 20, 2016 to present.

## ii. Scope of the Requests

Additionally, Defendants claim Plaintiff demands "'all' banking and brokerage account records of anyone and 'any entity' related to Cathcart or Mercator" for the past thirteen years, and Plaintiff "made no meaningful effort to restrict the scope of its subpoenas as required." ECF No. 60 at 19–21. These representations are inaccurate. As an initial matter, a side-by-side review of the July Subpoenas and September Subpoenas demonstrate a narrowing of the scope of the subpoenas. Those revisions include changing "bank records" to "documents reflecting income received," specifying the business entities in some of the requests, and eliminating Request No. 3 from the September Schwab Subpoena. ECF Nos. 63-2 at 26, 27, 34; 62-2 at 5; 62-1 at 5, 6.

Plaintiff counters it has a "right to test the legitimacy of Defendants' representations about their financial transactions." ECF No. 63 at 16. Defendant agrees with this assertion, but argues Plaintiff is limited to "those transactions that are relevant." ECF No. 65 at 2.

Furthermore, Plaintiff claims the records are proportional in scope as they are "critical to establishing the scope, timing, and intent of Defendants' transfers." ECF No. 63 at 5. Plaintiff explains it initiated post-judgment discovery to enforce the $6.3 million Judgment, where Com Nerys and Nerys USA claimed to have "virtually no assets." *Id.* at 6. Plaintiff alleges it discovered Com Nerys and Nerys USA had improper funds transfers to evade Judgment and were rendered "uncollectable shells." *Id.* at 7. Plaintiff argues post-judgment discovery determined: (a) Cathcart "personally loaned Nerys USA money to pay its attorneys' fees in the Arbitration because Nerys USA did not have enough funds to cover the costs itself," (b) Cathcart used Com Nerys and Nerys USA to "pay his personal expenses," (c) Cathcart transferred money from Nerys USA to Mercator for his personal

benefit, and (d) there are transfers from Mercator to Cathcart for personal expenses, including a $6,800 purchase from a New York jeweler. *Id.* at 7–8.

In reply, Defendants allege "whether Mercator is Cathcart's alter ego is not at issue," so Plaintiff's relevance arguments fail. ECF No. 65 at 4. Defendants spend three pages of their nine-page reply brief laying out Plaintiff's "misleading or incorrect statements" rather than directly rebutting Plaintiff's proportionality arguments. *Id.* at 6–9. At best, those alleged "misleading or incorrect statements" apply only to "over broad and irrelevant" arguments regarding discovery requests but not proportionality. *Id.* at 6.

The Court finds Defendants' response unavailing. Indeed, one of Plaintiff's base allegations is Mercator "was formed, owned, operated, controlled, and dominated by Cathcart, and that it is the alter ego of Cathcart, is united in interest with Cathcart and is subject to Cathcart's effective direction and control, operating by Cathcart as his alter ego." ECF Nos. 1 ¶ 12; 24 at 15. Plaintiff's Complaint also alleges "Mercator's bank statements show numerous transfers from Mercator to Cathcart for Cathcart's personal expenses" all funded by Nery's USA. ECF Nos. 1 ¶¶ 45–47; 24 at 15. Plaintiff's subpoena requests for documentation regarding transfers between the judgment debtors and Defendants are proportionate given the specific alter ego allegations in the Complaint.

Looking to Rule 26(b)(1) proportionality factors generally, the financial relationship between Defendants, Com Nerys, and Nerys USA is highly important to Plaintiff's alter ego allegations, a key issue in the case. The amount in controversy is significant—over six (6) million dollars. ECF No. 1 ¶ 5. The records requested are proportionate to the amount in controversy. Discovery will be crucial in resolving the parties' disputes, including alter ego allegations involving the judgment debtors and Defendants. Plaintiff does not have access to Defendants' bank records. Defendant admits Plaintiff sought production of Defendants' "banking and brokerage records from 2012 to present" through a Request for Production, to which Defendants' objected on the same basis as their subpoena objections. ECF No. 60 at 19. Plaintiff seeking the same information from Defendants as the subpoena requests does not weigh against Plaintiff. As Plaintiff notes, "there is no general rule that

plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession." ECF No. 63 at 14, *Viacom Int'l, Inc. v. YouTube, Inc.*, No. 08-cv-80129-SI, 2008 WL 3876142, *3 (N.D. Cal. 2008). Finally, the burden and expense of responding to the subpoenas are outweighed by the likely benefit of the discovery in this action.

Ultimately, Plaintiff is entitled to subpoena records relevant to transfers between Defendants and the Nerys business entities which may reveal comingling transactions or refute Plaintiff's allegations. For example, where Cathcart declares it was a "mistake[]" to purchase jewelry for his wife on a Mercator business debit card, which he "promptly" had fixed, Plaintiff is entitled to test the legitimacy of the declaration and seek records to prove or disprove it. ECF Nos. 1 ¶¶ 45–48; 60-2 ¶¶ 39, 40. Similarly, where Cathcart declares "Nerys USA was a viable business, not a shell" and "generated millions of dollars in sales, paid its debts and maintained its finances separate for any other's," Plaintiff can subpoena documents to prove or disprove Defendants' statement where the facts are relevant to Plaintiff's Complaint. ECF Nos. 60-2 ¶¶ 43, 44; 1, ¶¶ 29–33.

However, Cathcart's personal transactions unrelated to the subject business entities are not relevant or proportional. What Cathcart chooses to do with his funds, outside of Mercator, Nerys Logistics, Com Nerys, and Nery's USA, is irrelevant to Plaintiff's claim under Rule 45.[2]

Looking specifically at the requests, the September 5 subpoena to Schwab and Request Nos. 1, 2, and 3 of the September 5 subpoena to BofA currently specify payments or transfer of funds related to Cathcart, Mercator, Nerys Logistics, Com Nerys, and Nerys USA. ECF No. 60 at 11–12. These transfer requests are specific to the defendants in this lawsuit and the debtor entities Plaintiff alleges are Cathcart's alter ego. ECF No. 1 ¶¶ 49–

---

[2] If Plaintiff finds evidence from the review of the subpoena responses that warrant additional requests, relevant to Cathcart's payments and/or transfer of funds, Plaintiff may supplement the discovery requests with the newly acquired support.

52. The Court finds these requests focus on the payments or transfer of funds to Cathcart and Mercator and are therefore relevant and proportional for the purposes of discovery.

Request No. 4 of the September 5 BofA Subpeona could be interpreted more broadly. It requests, "[a]ll Documents concerning payments and/or transfer of funds or other things of value related to Cathcart . . ." ECF No. 60 at 12. Plaintiff represents it explicitly carved out Cathcart's personal banking transactions in the revised subpoena. ECF No. 63 at 11. Based on that representation, the Court interprets the "related to Cathcart" language narrowly to mean *only* payments and/or transfer of funds between Cathcart, Mercator, Nerys Logistics, Com Nerys, and Nery's USA. Personal bank account transactions outside of these entities are not relevant or proportional to the needs of this case. This interpretation aligns Request No. 4 with the other requests and captures transactions related to the relevant parties and business entities only.

Accordingly, the Court narrows Request No. 4 by replacing "related to Cathcart" with "between Cathcart, Mercator, Nerys Logistics, Com Nerys, and Nery's USA." With that clarification, the Court finds Plaintiff has met its burden of establishing the relevance and proportionality requirement of Rule 26 related to Defendants' business transactions in all the Requests.

2. Analysis – Privacy

Lastly, Defendants assert the subpoenas improperly invade both parties and non-parties privacy rights without substantial justification. ECF No. 60 at 21. Defendants argue Plaintiffs' subpoenas "ignore the privacy interests of Cathcart and third parties, including clients, employees and others with whom Cathcart and/or Mercator had financial transactions during the past thirteen (13) years" and stresses parties to litigation have a fundamental right of privacy under the California Constitution. Art. I, § 1. *Id.*

The Court understands Defendants' privacy concerns but finds the protective order protects party and non-party privacy interests effectively. ECF No. 54. Plaintiff's need for Defendants' financial documents outweighs Defendants' privacy objection.

Defendants' reliance on *Cobb v. Superior Court* and *Valley Bank of Nevada v. Superior Court* is misplaced. In *Cobb*, the Court recognized an individual's right to privacy in his financial information. 99 Cal. App. 3d 543, 552 (1979). However, privacy concerns can be protected by a protective order. *In re Heritage Bond Litigation*, Case No. 02-cv-1475-DT-RCX, 2004 WL 1970058 at n.12 (C.D. Cal. July 23, 2004) (finding any privacy concerns in bank records and related financial statements are "adequately protected by the protective order, and are not sufficient to prevent production"). In *Valley Bank*, the court held "before confidential customer information may be disclosed . . . the bank must take reasonable steps to notify its customer . . . of the proceedings and to afford the customer a fair opportunity to assert his interests . . . by seeking an appropriate protective order." 542 P.2d 977, 980 (Cal. 1975). In contrast, here Defendants do not argue the protective order is insufficient to protect third-party privacy interests, making *Valley Bank* inapplicable. As there is a Protective Order in this case, Defendants' arguments are not persuasive.

On balance, Defendants' privacy argument fails where the impact of disclosure of the information is protected by a protective order and the information requested is necessary for Plaintiff's claims.

In sum, although the Court is ordering enforcement of the September Subpoenas, it narrows the requests to a timeframe April 20, 2016 to the present, and BofA Request No. 4 is limited to payments and transfer between the relevant entities in this action—Cathcart, Mercator, Nerys Logistics, Com Nerys, and Nery's USA.

//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the reasons above, the Court **DENIES** Defendants' motion to quash, **NARROWS** the BofA and Schwab subpoenas to April 20, 2016 to present, and **NARROWS** the BofA Request No. 4 to "All Documents concerning payments and/or transfer of funds or other things of value between Cathcart, Mercator, Nerys Logistics, Com Nerys, and Nery's USA from April 20, 2016 to the present." ECF No. 60. The Court **ORDERS** compliance with the subpoenas within thirty (30) days.

**IT IS SO ORDERED**.

Dated:  December 4, 2025

*[signature]*
HON. MICHELLE M. PETTIT
United States Magistrate Judge